8/21/2019 6:52 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 36172817
By: C Ougrah
Filed: 8/21/2019 6:52 PM

# 2019-58469 / Court: 011

CAUSE NO. _____

| | | |
|---|---|---|
| Minh Nguyen, | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | **Harris COUNTY, TEXAS** |
| GeoVera Specialty Insurance Company | § | |
| | § | |
| *Defendant* | § | |
| | § | |
| | § | _____ **JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION, REQUEST FOR DISCLOSURES, REQUEST FOR PRODUCTION, INTERROGATORIES, REQUEST FOR ADMISSIONS AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFF Minh Nguyen ("Plaintiff") and files this Original Petition against GeoVera Specialty Insurance Company ("Defendant") and, in support of thereof, would respectfully show the Court the following:

### I. DISCOVERY CONTROL PLAN AND MONETARY RELIEF

1. Plaintiff intends to conduct discovery under Level 2. Tex. R. Civ. P. 190.3.

2. Plaintiff seeks monetary relief under $100,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees. Tex. R. Civ. P. 47(c)(1). Further, Plaintiff specifies that she seeks a maximum amount of damages that does not exceed the sum or value of $74,000, exclusive of interest and costs. Removal would be improper because there is no federal question. Plaintiff has not asserted any claims arising under the Constitution, treaties or laws of the United States of America. 28 U.S. Code § 1331. Further,

Exhibit A

1

removal would be improper because federal courts lack subject matter jurisdiction over this action, as the matter in controversy does not exceed the sum or value of $75,000, exclusive of interest and costs. 28 U.S. Code § 1332.

## II. CONDITIONS PRECEDENT

3. Pursuant to Tex. R. Civ. P. 54, Plaintiff asserts that all conditions precedent to recovery have been performed or have occurred.

## III. PARTIES, JURISDICTION AND VENUE

### A. PARTIES

4. Plaintiff Minh Nguyen is a Texas resident, who resides in 319 Cove Creek Ln., Houston, Harris County, Texas.

5. Defendant GeoVera Specialty Insurance Company is an insurance company doing business in the State of Texas, which may be served through its general manager or any other officer or director, via certified mail, at GeoVera Specialty Insurance Company may be served by serving through the Texas Commissioner of Insurance c/o Texas Department of Insurance, via hand delivery to 333 Guadalupe, Austin, Texas 78701, or via Certified Mail to Chief Clerk Office, PO Box 149104, MC 112-2A, Austin, Texas 78714-9104, with the Commissioner / TDI forwarding process to 1455 Oliver Rd. Fairfield CA 94534-3472. Austin, TX 78701-3218.

### B. JURISDICTION

6. The Court has subject matter jurisdiction over this cause of action because it involves an amount in controversy in excess of the minimum jurisdictional limits of the Court.

7. The Court has both general and specific personal jurisdiction over Defendant. The Court has general jurisdiction over Defendant, as Defendant has sufficient minimum contacts with and

Certified Document Number: 86762573 - Page 2 of 29

2

within this State and has purposefully availed itself of the privilege of conducting activities within this State, thus invoking the benefits, protections, and obligations of this State's laws. Defendant's contacts with this State, which are continuous and systematic, include doing business in Texas, selling and delivering insurance products in Texas, entering into contracts for insurance in Texas with Texas residents, insuring property located in Texas, underwriting insurance policies in Texas, accepting policy premiums in Texas and adjusting insurance claims in Texas. This activity was not the unilateral activity of another party or a third person.

8. Defendant's contacts with Texas, relied upon by Plaintiff, were purposeful and were not random, fortuitous, or attenuated, and are thus subject to the jurisdiction of this State in suits based on its activities. The Court has jurisdiction over Defendant because: (1) Defendant purposefully availed itself of the benefits of conducting activities in Texas, and (2) the cause of action arises from or relates to those contacts or activities.

9. The Court has specific jurisdiction over this matter as it involved the execution, performance, and breach of a Texas insurance contract with Plaintiff, who is a Texas resident, with regards to an insured risk and/or property located in Texas. As a matter of law, Defendant conducted business in this State because, without limitation, Defendant conducted the business of insurance in Texas and committed one or more torts and/or violated the Texas DTPA and/or Insurance Code, in whole or in part in this State, against Plaintiff in Harris County, Texas. Defendant has sufficient and/or minimum contacts with this State, and thus Plaintiff affirmatively assert the Court's exercise of jurisdiction over Defendant comports with "traditional notions of fair play and substantial justice."

C.    **VENUE**

Certified Document Number: 86762573 - Page 3 of 29

3

10.    Venue is proper in Harris County because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County. Tex. Civ. Prac. & Rem. Code § 15.002(a)(l).  The property subject to this dispute and which is owned by Plaintiff is located in Harris County.  The insurance policy insuring the property was executed in Harris County. The damage to the property resulted from an event or occurrence in Harris County.  The resulting insurance claim that was made by Plaintiff, the property inspection performed by Defendant, and the denial and/or underpayment of the insurance claim by Defendant occurred in Harris County.

## IV.    FACTUAL BACKGROUND

11.    Minh Nguyen is a named insured under a property insurance policy issued by GeoVera Specialty Insurance Company.  The policy number is ***6790.

12.    Hurricane Harvey caused major wind damage to thousands of homes in the Southeast Texas area. Hurricane Harvey's winds were sufficient to cause damage as evidenced in this claim..  Thereafter, Plaintiff's subsequently filed a claim on her insurance policy.

13.    Defendant improperly denied and/or underpaid the claim.

14.    Defendant conducted a substandard investigation and inspection of the property, prepared a report, which did not include all of the damages that were observed during the inspection, and undervalued the damages observed during the inspection.

15.    Specifically, On August 28, 2017, Hurricane Harvey hit the Texas coast, which included Harris County. This resulted in severe roof and interior damage to Plaintiff's home. Due to the roof damage, water entered into the house. As a result, the water damaged the walls of the house. Thereafter, Plaintiff filed a claim on her insurance policy.

16. Defendant performed an outcome-oriented investigation of Plaintiff's claim. Defendant's (improper) claims handling included Defendant's biased claims adjustment, and an unfair and inequitable evaluation of Plaintiff's losses on the property. In addition, Defendant's claims handling included both an unreasonable investigation and underpayment of Plaintiff's claim.

## V. CAUSES OF ACTION AND ATTORNEY'S FEES

17. Plaintiff incorporates the foregoing for all purposes.

### A. BREACH OF CONTRACT

18. Plaintiff and Defendant entered into an insurance contract. Defendant breached this contract by, without limitation, inadequately and/or improperly investigating Plaintiff's insurance claim, wrongfully denying and/or underpaying the claim. Defendant damaged Plaintiff through its actions and/or inactions described herein.

### B. PROMPT PAYMENT OF CLAIMS STATUTE

19. Defendant's failure to pay for Plaintiff's losses and/ or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542. 051 *et seq.* of the Texas Insurance Code.

20. In addition to Plaintiff's claim for damages, Defendant's violation of the Tex. Insurance Code entitles Plaintiff to interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

### C. BAD FAITH

21. Defendant is an insurance company and insured Plaintiff's property. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

22. Defendant violated Section 541.051 of the Texas Insurance Code by, without limitation:

5

1. Making statements misrepresenting the terms and/or benefits of the policy.

23. Defendant also violated Section 541.060 by, without limitation:

   1. Misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

   2. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

   3. Failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromised settlement of a claim;

   4. Failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and/or

   5. Refusing to pay the claim without conducting a reasonable investigation with respect to the claim;

24. Defendant violated Section 541.061 by, without limitation:

   1. Making an untrue statement of material fact;

   2. Failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made;

   3. Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

   4. Making a material misstatement of law; and/or

   5. Failing to disclose a matter required by law to be disclosed.

Certified Document Number: 86762573 - Page 6 of 29

25.     Defendant knowingly committed the acts complained of. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to Texas Insurance Code Section 541.152(a)-(b).

**D. ATTORNEYS' FEES**

26.     Plaintiff engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

27.     Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because an attorney that represents Plaintiff presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

28.     Plaintiff further prays that she be awarded all reasonable attorneys' fees incurred in prosecuting her causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## VI.     DISCOVERY REQUESTS

29.     Pursuant to Tex. R. Civ. P. 194, 195, 196, 197 & 198, and in accordance with the instructions stated therein, Plaintiff requests that Defendant respond to the attached Request for Disclosures, Request for Production, Interrogatories, and Request for Admissions within fifty (50) days of its receipt of the same. See Exhibit A, attached hereto.

## VII.     TEX. R. CIV. P. 193.7 NOTICE.

30.     Pursuant to Tex. R. Civ. P. 193.7, the undersigned hereby notifies all parties and counsel of record that Plaintiff may introduce into evidence at the time of trial or pre-trial, those documents produced by all parties in response to requests for production and/or requests for disclosure in this matter.

## VIII.   JURY DEMAND

31.    Pursuant to Tex. R. Civ. P. 216, Plaintiff hereby demands trial by jury and has tendered the appropriate fee.

## IX.   PRAYER

32.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that, after due process of law, Plaintiff have judgment against Defendant for actual damages, together with exemplary damages, statutory damages, treble damages, statutory interest, pre-judgment interest, post-judgment interest, attorneys' fees, costs of suit, and for all such other and further relief, both general and special, in law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

THE BUZBEE LAW FIRM

By: /s/ *Anthony G. Buzbee*
Anthony G. Buzbee
State Bar No. 24001820
Christopher J. Leavitt
State Bar No. 24053318
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 223-5909
tbuzbee@txattorneys.com
cleavitt@txattorneys.com
www.txattorneys.com

AND

LAW OFFICES OF MANUEL SOLIS, PC
6657 Navigation Blvd.
Houston, TX 77011
Phone: (713) 277-7838

8

Fax: (281) 377-3924

By: /s/ *Stephen R. Walker*
Stephen R. Walker
Texas Bar No. 24034729
Email: swalker@manuelsolis.com
Gregory J. Finney
Texas Bar No. 24044430
Email: gfinney@manuelsolis.com
Juan A. Solis
Texas Bar No. 24103040
Email: jusolis@manuelsolis.com

ATTORNEYS FOR PLAINTIFF
**EXHIBIT A**

## **PLAINTIFF'S REQUEST FOR DISCLOSURES TO DEFENDANT**

Pursuant to Tex. R. Civ. P. 194 & 195, Plaintiff serves her Request for Disclosures upon

Defendant. Plaintiff requests that Defendant provide the information or material described in

Rules 194.2(a) through (l) and 195. Defendant's responses to the same are due within 50 days of

the service of this request.

## **PLAINTIFF'S REQUEST FOR PRODUCTION, INTERROGATORIES AND REQUEST FOR ADMISSIONS TO DEFENDANT**

Pursuant to Tex. R. Civ. P. 196, 197 and 198, Plaintiff serves her Request for Production,

Interrogatories and Request for Admissions upon Defendant. Defendant's responses to the same

are due within 50 days of the service of these requests.

## **DEFINITIONS**

The following terms are defined and used in these requests as follows:

1. "**Plaintiff**", "**Plaintiff**(s)" means **Minh Nguyen**, and all representatives acting or purporting to act on their behalf with respect to any matter inquired about in these discovery requests.

Certified Document Number: 86762573 - Page 9 of 29

2.      "**Defendant**", "**Defendant(s)**" and means **GeoVera Specialty Insurance Company**, and all representatives, purporting to act on its behalf with respect to any matter inquired about in these discovery requests.

3.      "**You**" or "**Your**" or "**Yours**" or "**Yourself**" means **GeoVera Specialty Insurance Company**, and all representatives acting or purporting to act on your behalf with respect to any matter inquired about in these discovery requests.

4.      The term "**person**" or "**individual**" or "**entity**" means and includes, without limitation, every natural person, association, firm, partnership, corporation, board, committee, agency, commission, legal entity of any form or type, and every other organization or entity, whether public or private.

5.      The singular and masculine form of any noun or pronoun includes the plural, the feminine, and the neuter.

6.      "**Statement**" includes any written or graphic statement signed or otherwise adopted or approved by the person making it, and any stenographic, mechanical, electronic or other recording or transcription thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded. This includes any "**Witness Statement**." *See* Tex. R. Civ. P. 192.3(h)

7.      "**Document**" or "**Documents and Materials**" includes, but is not limited to, the originals and all copies of written, reported, recorded or graphic matter however produced or reproduced, which is now or was at any time in the possession, custody, or control of the producing party, the party's attorneys, accountants, or any of their agents, including but not limited to, all papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, and any other data compilations from which information can be obtained and translated, if necessary, by the person from whom production is sought, into reasonably usable form, or all of the foregoing upon which notations and writings have been made and which do not appear on the original.

8.      "**Identify**" when referring:

(a)     to a person, means to state his or her full name, present or last known business or residential address, e-mail address and phone number;

(b)     to a public or private corporation, partnership, association, or organization, or a governmental agency, means to state its full name, present or last known business address, e-mail address, and phone number;

(c)     to a statement, means to identify who made it, who took or recorded it, and all persons, if any, present during the making thereof; to state when,

Certified Document Number: 86762573 - Page 10 of 29

10

where, and how it was taken or recorded; and to identify who was present or had last known possession, custody, or control thereof;

(d)     to a document, means to give a reasonably detailed description thereof, including, if applicable, when, where, and how it was made; to identify who made it; and to identify who was present or had last known possession, custody or control thereof; and,

(e)     to any other tangible thing, means to give a reasonably detailed description thereof, including, if applicable, when, where, and how it was made; to identify who made it; and to identify whom has present or had last known possession, custody or control thereof.

9.     The phrases "**relating**", "**relating to**", "**all documents relating to**", "**all documents related to**", and "**all other documents relating to**" (along with all similar phrases) mean and include all documents that relate in any way to the subject matter in question and/or the subject matter of the specific request, including, without limitation, all documents that contain, record, reflect, summarize, evaluate, comment upon, or discuss that subject matter or that in any manner state the background of, or were the basis for, or that relate to, record, evaluate, comment upon, or were referred to, relied upon, utilized, generated, transmitted, or received in arriving at conclusion(s), opinion(s), estimate(s), position(s), decision(s), belief(s), or assertion(s) concerning the subject matter in question.

10.     "**Communication**" refers to any transmission of information, including without limitation correspondence, documents, reports, telephone calls, e-mail, text messages, private messages, or conversations.

11.     "**Demand**" or "**Legal Demand**" or "**Demand Letter**" refers to any demand or notice of claim sent to You by Plaintiff's counsel on or about April 5, 2019.

12.     "**Lawsuit**" means the lawsuit styled captioned above in the "**Petition**" filed in the Judicial District Courts of Harris County, Texas.

13.     "**Petition**" refers to the Original Petition along with all amendments and supplements thereto.

14.     "**Cause**" or "**Matter**" are generic references encompassing any one or all the following: the Claim, Demand, Claim-related dispute, Lawsuit, and Petition.

15.     "**Damage(s)**" or "**Loss(es)**" or "**Property Damage(s)**" is the property damage(s) sustained by the Subject Property made the basis of the Claim, the denial of which is made the basis of the Lawsuit. This term includes "Other damages."

16.     "**Other Damages**" means debris removal, temporary repairs, tree and shrub removal, personal property removal and storage, loss of use and additional living expenses.

17.     "**Insured Location**" or "**Subject Property**" shall mean and refer to real property located at 319 Cove Creek Ln. Houston, Texas 77042. Insofar as the Claim relates to damage to "Other Property" not physically located at this address, but still covered by the Policy, include such property as being part of the "Subject Property."

18.     "**Dwelling**" or "**Residence**" means the dwelling located at the Insured Location at the time of the Event.

19.     "**Commercial Structure**(s)" are insured commercial building(s) or structures at the Insured Location.

20.     "**Other Structures**" means any insured structures located at the Insured Location during the Event that are set apart from the Residence (or) Commercial Structure by a clear space, including those connected only by a fence, utility line, or similar connection.

21.     "**Personal Property**" means any or all of the personal property and business personal property that is the subject of the claims made against Defendant(s) in this Lawsuit.

22.     "**Other Property**" means any other type of insured property or chattel property made the basis of the Claim, whether or not located at the insured location.

23.     "**Date of Loss**" or (as abbreviated) "**DOL**," is August 28, 2017 and/or the date the insured property was damaged.

24.     The "**Relevant Time Frame**," or "**Relevant Period**" (unless otherwise specified) is from August 28, 2017 through the present. If a different period and/or time frame is relevant to a particular request, that request will say so. If it does, follow the time frame specified.

25.     "**Policy**" is policy number GeoVera Specialty Insurance Company Policy No. xxxx6790 and/or all relevant policies of insurance purchased from, and issued by you as to the Subject Property. If more than one insurance policy is applicable and/or relevant to the Claim and Lawsuit, then the term Policy as used below refers to all such Policies.

26.     "**Policy Period**" is the effective date of the Policy, i.e., the Policy inception date, and termination date, for the Policy in place during the Date of Loss.

27.     "**Declarations**" or "**Declarations Page**" which is sometimes referred to informally and/or in abbreviated form as the "**Dec Page**," is normally the front page (or pages) of a policy that specifies the named insured, address, policy period, location of premises, policy limits, and other key information that varies from insured to insured.

28.     "**Claim**" is the claim for Property Damage lodged by Plaintiff(s) for the Event, i.e., the Plaintiff's claim for damage reported to you. Depending on context or matter facts, this may also encompass the Demand Letter sent by Plaintiff's counsel.

12

29. **"Other Claim**(s)" means other claims for property damage other covered loss, including prior claims made by Plaintiff(s) relative to the Subject Property, which does not include or encompass the Claim and/or the allegations made the basis of the Lawsuit.

30. **"Claim number"** is and/or shall refer to the number assigned by You to Plaintiff's Claim, specifically .

31. The **"Event"** is Hurricane Harvey which occurred in and around Harris County, Texas on August 28, 2017.

32. **"Handle"** or **"Handled"** or **"Handling"** means claims activity including without limitation, adjusting, supervision, estimating, settling along with all activity related to your receipt, adjustment and settling or denying the Claim.

33. **"Claim File"** is all paper and electronic records and information obtained, kept and/or maintained by you or on your behalf, which relates to the Claim(s) submitted by Plaintiff(s) for the Loss. This includes, without limitation:

- Correspondence or records of communication with Plaintiff(s) and any person related to the Claim. It includes all Claim(s) handling information, Claim(s) adjustment, internal Claim notes, recording(s), annotations, inspections, inspection reports, field notes, and communications with inspectors or adjusters, request for information to and from any person or entity, which relate to the Claim.
- All information, which you received, reviewed, cross-referenced, relied upon relative to your handling and disposition of the Claim. This includes all references to any internal deadlines and your set for yourself.
- All other claim or underwriting file(s), for any *other* and/or previous loss claim made by the Plaintiff(s) relative to the Subject Property, used as part of Your evaluation, adjustment, denial, or payment regarding the Claim. This includes the claim file for these others claims inclusive of all documents, reports, photographs, and files of all inspection of the Subject Property, inspection reports of any kind, and all estimates of damage.
- Insofar as the "Claim File" includes claim-handling guideline(s) promulgated by you, and/or the Claim File makes any implicit or explicit reference to such guideline(s), include Your production such guideline(s) along with the claim file unless otherwise produced in response to another request.
- Insofar as You produce any guideline separately, you must produce or identify information, which connect and/or identify the connection between the claim file reference and the guideline, which you separately produced.

34. **"Underwriting File"**, means documents or information You (and for the purpose of this definition, Your underwriters and/or underwriting department) reviewed as part of your process of determining whether to insure the Subject Property, including your evaluation of risk and/or acceptable risk and the rate you charged for the relevant risk Policy. This includes your inspection of the Subject Property anything, which You reviewed as part of our underwriting

process. It also includes any correspondence and documents exchanged between You, Your agent or any independent agent and Your underwriter(s) and/or underwriting department, including without limitation questions and answers exchanged between any agent and underwriter(s) regarding the Subject Property relating to insuring and/or binding the policy for the relevant Policy Period or preceding policy period.

35.     "**Reserve**(s)" money set aside or "reserved" to meet future payments associated with the Claim (or claims related to the Event) incurred but not yet settled at as of the date such reserve(s) is/are set. This includes initial reserves and all amendments or revisions to reserves made over time.

36.     "**Third Party**" means persons or entities other than the parties and their employees.

37.     "**Insurance Agent**" means the person and/or entity that sold the Policy to Plaintiff. This definition includes any independent insurance agent.

38.     "**Covered Peril**" is a damage risk or cause of loss covered by the Policy.

39.     All definitions should be given their common sense meaning and/or be construed as broadly as possible. If you do not understand a definition, or if you believe a definition precludes You response to discovery request absent further clarification, it is incumbent on You to clarify the definition versus objecting to same and using any such objection as the putative basis for refusing to respond and/or produce documents. Likewise, if a particular definition does not apply to You / Your company, explain this in your response. By way of hypothetical example, if your company does not create declaration pages, explain this in your response, or identify the document, which carries a different name, but you (believe) serves the same or similar purpose.

## INSTRUCTIONS

1.     You have the duty to supplement under the rules. Pursuant to Tex. R. Civ. P. 193.5, you are under an affirmative duty to supplement your responses to all discovery requests with information that you may acquire after filing your written response, if such information makes it known to you that your previous response was incorrect or incomplete when made, or, if the answer though correct and complete when made, is no longer true and complete and circumstances are such that a failure to amend would be in substance misleading. You are hereby requested to agree to so supplement any of your written responses to these discovery requests, and in the absence of any written objection to this request, it will be presumed that you have agreed to do so.

2.     If you are withholding information pursuant to any privilege, produce a withholding statement and/or privilege log as specified in Tex. R. Civ. P. 193.3.

3.   Pursuant to Tex. R. Civ. P. 215, if you fail to comply with proper discovery requests, the Court may make such orders in regard to the failure as are just, including among others, an order requiring you or your attorney, or both, to pay reasonable expenses, including attorneys' fees, caused by the failure. This includes timely responses to all requests. You are on notice that needless delays, improper and/or spurious objections will increase litigation fees and costs. Plaintiff(s) will seek fees and costs for unnecessary delays.

4.   Plaintiff(s) will agree to a reasonable protective order, which complies with the rules.

   a. Do not respond to these requests, withholding production, pending the entry of a court-ordered protective order. As stated herein, Plaintiff will agree to reasonable extensions of time and a pre-agreed order on protection.

   b. However, You must provide for and obtain an agreement on a protective order first. After such agreement is reached, Plaintiff(s) will agree to abide by the proposed protective order/confidentiality agreement pending court signature and/or entry.

   c. Plaintiff(s) will agree to a protective order that 1) encompasses protection for information which is genuinely confidential, proprietary and/or private, 2) excludes protection for documents for which confidentiality has been waived, 3) complies with the Tex. R. Civ. P., and the local rules of court, 4) does not require document(s) to be filed "under seal" simply because You marked them "confidential."

   d. As to filing documents under "seal," any agreement will include a requirement that the proponent of any document's purported confidentiality, which would require document(s) be filed "under seal," must obtain a signed court order requiring such documents be filed under seal within 60 days of marking or producing marked documents as confidential. Otherwise, this filing requirement (will be) waived along with confidentiality of the documents for filling and/or use in any proceeding.

   e. Plaintiff(s) will not agree to any order which would also require documents be submitted under seal and/or for in-camera inspection, which *also* prevents such documents from being made part of the official record of the matter during the pendency of such determination. Likewise, the confidentiality agreement will also include a stipulation that any motion, or filing which would cause any document, on a temporary basis or otherwise, to not be made part of, or included in the Court's official record and/or record on appeal voids the confidentiality agreement.

5.   **Plaintiff(s) seeks Discovery of Electronically Stored Information ("ESI").   In accordance with Tex. R. Civ. P. 196.4, Plaintiff(s) hereby request(s) that all ESI and responsive data or information that exists in electronic or magnetic form be produced in the TIFF (or other format specified below).**

6.   **Plaintiff(s) seeks a conference regarding production of ESI documents as set forth below. Plaintiff(s) agree(s) to collaborate on an agreed method for producing ESI, which avoids undue burden and expense. *See In re Weekley Homes, L.P.*, 295 S.W.3d 309 (Tex. 2009). Plaintiff(s) will entertain (other) methods of production,**

**other than those specified below, which preserve native document format, information, and metadata. This includes Plaintiff's willingness to consider and reasonably adopt previously utilized and/or prior court-adopted protocols within the relevant jurisdiction. This may include through prior agreement, a tiered production process, which does not (initially) involve this protocol, but which includes later supplementation utilizing the protocol. On request, Plaintiff(s) will agree to a reasonable extension(s) and/or accommodations to facilitate the production of ESI in order to avoid (any) undue burden or expense. Otherwise, images and information will be produced with all metadata preserved under the protocol below.**

7.   Defendant(s) must preserve Native format data. Regardless of the preliminary production format, Defendant(s) is/are demanded and must preserve and maintain all documents in their native format with all metadata intact. This preservation must include a complete and unaltered archive of all documents made the subject of this request and/or relevant to this Matter. If it is impossible or impracticable to convert native documents to the format specified below, then the production of said material/documents will be in either 1) another format which offers the same or similar content review, search and cross-reference capabilities, or 2) documents in their native format.

8.   All production will be electronic unless otherwise agreed. Defendant(s) shall produce ESI, documents, and data existing as electronic or magnetic data electronically. Production responses will be via USB, Flash or "Jump" drive, or external digital hard drive, or by a mutually agreeable digital file transfer protocol or method. If particular document(s) warrant production in a different format and/or a format not specified herein, Plaintiff(s) will cooperate with Defendant(s) regarding a mutually acceptable format.

9.   Responses must include specific reference to documents by Bates number and range. Documents and/or images must be marked sufficient to identify individual documents, which are responsive to each request including the beginning and ending range of the documents with the entire document produced in a consecutively numbered range.

10.  You must scan paper documents as high-quality images. Defendant(s) shall scan Black and white paper documents as TIFF files. Defendant(s) shall scan color documents and photographs, and images in color as 300 dpi single-page JPEG files with the quality setting at high.

11.  Defendant(s) will produce documents as Group IV "TIFF" files. Unless otherwise specified in this request (or as might otherwise be agreed by the Parties) Defendant(s) shall produce all documents will be produced as 300 dpi single-page TIFF files, using CCITT Group IV compression. Each page will contain a readable Bates number that does not obscure in any information contained in the original and/or source document.

12.  Reference files will accompany the Tiff images. All production documents will be produced with extracted text and load files, including the following:

Certified Document Number: 86762573 - Page 16 of 29

a. A "Reference file" in either .dat (Relativity), .opt (Relativity / Concordance / Opticon), .dii (Summation), or .lfp (IPRO) (or other format), so long as the format used by Defendant(s) is readily and accurately convertible to the other formats listed without loss of any information. This "reference file" will associate each Bates number with its corresponding single-page image file; and,

b. The parties shall also provide an ASCII delimited "load file," such as a data (.dat) or delimited text file (.csv), that will populate fields in a searchable flat database environment, containing one line for each document and fields for first and last Bates number.

c. To the extent extractable information exists, data in the load file shall include the following fields of information:

- Beginning and ending document numbers;
- Beginning and ending attachment ranges (calculated from the first page of the parent document to the last page of the last attached document);
- "Parent" identification for attachments, i.e., information establishing the relationship between documents and attachments;
- Page count within a document;
- Date and time created, modified and accessed;
- Author(s), page count, title and/or the text in the "Title" field of the application file;
- File type and path;
- The name of the application that generated the native file;
- A link to the native file if produced; and,
- Custodian information.

13. Defendant(s) will save and serve Optical Character Recognition (OCR) generated text, in a text file named containing the Bates number of the document, saved in the same directory as the images. For example, Defendant's Production 0000001.tiff and Defendant's Production 0000001.txt.

14. Word Processing Documents. Defendant(s) will convert and produce Word, WordPerfect, and PDF documents produced consistent with the above. The text load file accompanying these images will include the filename of the document as a metadata field. Defendant(s) will produce extracted text (instead of OCR) unless Defendant(s) redact(s) the document. In that case, Defendant(s) can produce OCR text.

15. E-mails will be produced in date and temporal order with attachments extracted. Defendant(s) will preserve all associations between emails and attachments, along with the attachment themselves. Defendant(s) must produce e-mail attachments in consecutive order, with attachments extracted produced proximately with the e-mail (which attached and sent or forwarded the attachment(s), such that the relationship

Certified Document Number: 86762573 - Page 17 of 29

between the two are identified and preserved using extracted metadata and/or custom metadata which identifies the "parent-child" relationship between e-mail and attachment along with relevant range. Save for certain exceptions noted below, Defendant(s) will convert Email and attachments to single-page images and produce same as per the specifications set forth herein. Defendant(s) will also produce a copy of the e-mails produced in their native form, as a .PST file.

16. Specifically as to e-mails, the text load file shall contain, in addition to first and last Bates numbers and delimited fields that capture the data in each of the following metadata fields: To, From, CC, BCC, Subject, date sent, time sent, e-mail thread, number of attachments for emails captured from Microsoft Outlook or Lotus Notes, Conversation Index. The text file accompanying the TIFF images shall contain the extracted text from the email, with fields, which include the above, as well as information described in 12(a-c) above, without limitation.

17. Production of OCR text is acceptable for redacted e-mail documents. Attachments shall be processed as though they were separate documents, and the text load file shall identify, for each email, the Bates range of any attachment and/or consistent with the above.

18. Defendant(s) will produce Excel files and other spreadsheets and digital photographs in native file format, in a separate folder and/or file folder contained on the production media. The corresponding text load file must contain a field that identifies the file path of the native file corresponding to (these) document(s). **Do not scan, image, or PDF Spreadsheets.** Unless previously agreed, these are to be produced in native format, or in a format which 1) produces active/working fields from the spreadsheet, and 2) preserves metadata information described herein and avoids the production of voluminous and needless empty excel and/or spreadsheet files.

19. A placeholder image with Bates number(s) must be included in the location (within the sequence of other documents produced) which identifies the document by name or Bates number and range and indicates where the spreadsheet is located, i.e., the separate folder. For example, if an excel spreadsheet is attached to an e-mail, a placeholder document should be included in the e-mail production, but the extracted excel attachment must be served in the separate folder discussed above. Responses and/or sufficient information must be provided in/on the placeholder, text load file, or other reference to allow the Parties to search for either the e-mail or the attached spreadsheet and locate and/or identify both, i.e., all communications/attachments within a specific parent-child (document) relationship.

20. Again, Plaintiff(s) is/are amenable to alternative methods of production, which preserve native content and/or metadata. But insofar as production involves imaging, the method should ensure that superfluous pages containing zero relevant data or information are not produced.

21. ESI and/or document subject to the ESI protocol include, without limitation:

Certified Document Number: 86762573 - Page 18 of 29

a. Spreadsheets and tables, e.g., Excel or Lotus 123 worksheets;
b. Accounting application data, e.g., QuickBooks, Money, Peachtree data files;
c. Sound recordings, e.g., WAV and MP3 files;
d. Video and animation, e.g., AVI and MOV files;
e. Computer aided design/drawing files e.g., .dwg, .dxf, .rvt;
f. PowerPoint presentations, e.g., .PPT and .PPTX
g. Microsoft Access databases, e.g., .MDB and .ACCDB;
h. Images, e.g., -JPG, .JPEG, and .PNG;
i. Scheduling files e.g., .P3, .P3C, .PRY, and .XER'; and,
j. Any other non-text based file type, e.g., other than Microsoft Word, or Word Perfect formats such as .doc, .txt, docx., .rtf, .wpd.

22. Defendant(s) will seek to avoid unnecessary duplication of identical documents. If identical documents can be identified by metadata or otherwise, and substituted with single page placeholder documents identifying the same document, Defendant(s) shall do so. For example, a document attached to an e-mail sent, forwarded, forwarded multiple times, Defendant(s) should produce said document/attachment once and provide place holders elsewhere in lieu of producing the same document multiple times.

23. In addition to the above, Defendant(s) shall produce a PDF version of the documents made responsive to Requests 1, 2, and 3. These versions will contain the same Bates range as their TIF counterparts, but will also include the terms "PDF Version", which follows the relevant Bates range.

## NOTICE OF AUTHENTICATION

As per Tex. R. Civ. P. 193.7, Plaintiff(s) intend to use all documents exchanged and produce between the Parties, including but not limited to correspondence and discovery responses during the trial of the matter styled and captioned above.

## PLAINTIFF'S REQUEST FOR PRODUCTION TO DEFENDANT

Request for Production No. 1: Produce the following documents:

a. A certified copy of the Policy.
b. A certified copy of the Policy Declaration Page(s), for the Subject Property, for the last three years.

Request for Production No. 2: Produce a color copy of the Claim File.

Request for Production No. 3: Produce the complete Underwriting File(s) for the Policy or Policies issued to Plaintiff(s) for the Subject Property, for the Policy Period covering the Event.

Request for Production No. 4: Produce the complete Underwriting File(s) for the Policy or Policies issued to Plaintiff(s) for the Subject Property for two Policy Periods and/or years preceding the year of the Event.

Request for Production No 5: If you contend Plaintiff(s) made Other Claim(s) for property damage(s), which affected your Claim decision(s), for these Other Claim(s), produce certified copies of:

- a) The relevant underwriting file(s);
- b) Relevant policies; and,
- c) The Claim file(s).

Request for Production No. 6: Produce all Communications with Plaintiff(s).

Request for Production No. 7: Produce all communications with any person or entity regarding Plaintiff(s), the Subject Property, or Claim.

Request for Production No. 8: Produce all communications with any local, state, or federal governmental entity related to the Plaintiff(s), Subject Property, Claim, or Lawsuit.

Request for Production No. 9: Produce all Claim related communications to, from, or involving any:

- a) Claim handler, personnel, and manager;
- b) Independent, or public adjuster;
- c) Inspector or estimator;
- d) Any non-third party engineer or consultant;
- e) Any third party contractor, engineer or consultant;
- f) The direct or indirect managers or supervisors of these individuals or entities.

Request for Production No. 10: Produce all communications with Plaintiff's insurance agent, which relates to the Claim, the Subject Property, or the Lawsuit.

Request for Production No. 11: Produced Plaintiff's file and/or records kept or maintained by Plaintiff's insurance agent, for which you have custody, control or access.

Request for Production No. 12: Produce all documents which identify Plaintiff's Insurance Agent.

Request for Production No. 13: Produce all documents and materials provided to Plaintiff(s) regarding the Claim or Subject Property.

Request for Production No. 14: Produce all documents and materials, which Plaintiff(s) provided to You, regarding the Claim or Subject Property.

Certified Document Number: 86762573 - Page 20 of 29

Request for Production No. 15: Produce all documents and materials, which any person other than Plaintiff(s), provided to You, regarding the Claim or Subject Property.

Request for Production No. 16: Produce all reports, weather reports, storm reports, interviews, witness statements, surveys, appraisals, damage estimates, proofs of loss, or adjuster report(s) referring to the Claim, Subject Property or damage to the Subject Property.

Request for Production No. 17: Produce color copies of all visual depictions, reproductions, diagrams, drawings, photographs, video recording or tapes of, or related to the Subject Property before, on or after the date of Loss.

Request for Production No. 18: Produce all claims handling instructions, manuals, standards or guidelines in effect on the date of loss, which relate to the claims handling practices, procedures and standards for property damage of the type, which is made the basis of the Claim.

Request for Production No. 19: Produce all documents reflecting the condition of the Subject Property or damages to the Subject Property for similar prior insurance claim(s) (if any) asserted by Plaintiff(s) relative to the Subject Property.

Request for Production No. 20: If you contend any of the following, then produce all documents evidencing the basis of any of these contentions.

   a) Plaintiff sustained no damages whatsoever;
   b) Plaintiff sustained no damages caused by the Event;
   c) Plaintiff sustained damage, caused by some other event or cause;
   d) Plaintiff sustained no covered loss under the Policy.

Request for Production No. 21: Produce document(s) evidencing Reserves set for the Claim.

Request for Production No. 22: Produced all requests for information to or from any Third Party regarding the Subject Property, the Plaintiff(s), or the Claim or, or any other claim for the last three years.

Request for Production No. 23: All formal or informal policies, procedures or guidelines utilized to assist, instruct, advise, or guide any person who handled the Claim, or which was created and/or maintained by you relative to claims handling and/or adjustment of the type of claim(s) made the basis of the lawsuit, which were in effect on the date of loss.

Request for Production No. 24: Produce all documents and information received or obtained by You through any method whatsoever, from any person(s), entity(ies), or source, which relates to Plaintiff, the Subject Property, the Policy or Claim. This request is inclusive of discovery in this matter, or any other matter insofar as it relates to the documents and information described in this request.

Certified Document Number: 86762573 - Page 21 of 29

Request for Production No. 25: Produce document(s), which identify all person(s) or entities who inspected, assessed causation and/or assessed damages, inclusive of any person(s) who provided You with any report and/or estimate of the cost to repair damages for the Claim. In your response, segregate between:

    a)     Your employees;
    b)     Persons/entities with whom you engaged or contracted for relevant services; and,
    c)     Persons or entities not employed, engaged, or contracted by You.

Request for Production No. 26: Produce all communications between You and any person(s) who inspected, assessed causation and/or assessed damages, inclusive of any person(s) who provided You with any estimate of the cost to repair damages for the Claim. This request includes all reports, assessment, and estimates in their partial, preliminary, draft, and final form(s).

Request for Production No. 27: If you hired or engaged any Third Party, including without limitation an engineer, appraiser, or inspector, to inspect and assess causation and/or assess damages relative to the Subject Property or Claim, produce all:

    a) Documents which identify this/these person(s) or entity(ies);
    b) All communications between you and this/these person(s) or entity(ies);
    c) All reports, assessment, estimates in their partial, preliminary, draft, and final form(s);
    d) All agreement, contracts, bills, invoices, payments with, by or to this/these person(s) or entity(ies);
    e) Documents or information indicating how many times you have engaged or hired this/these person(s) or entity(ies) in the past;

Request for Production No. 28: Produce a copy of the source(s) for prices or price list utilized by You and/or Your estimator in Your estimate to repair damages. Insofar as this price list is derived from a program, vendor-maintained database, or collection of prior, similar estimates, produce this underlying data.

Request for Production No. 29: In addition to the Claim number, produce documents sufficient to identify all internal claim number(s), code(s), name(s), and nomenclature(s), utilized by You internally and/or without Your company to refer or identify the Plaintiff, Claim, other than the Plaintiff's name and Claim Number assigned by You and/or listed defined above.

Request for Production No. 30: Insofar as you assert Plaintiff's Claim was submitted to you untimely, produce documents that support this contention. Include documents which memorialize the date and time of Plaintiff's loss report and the precise section of the policy relied upon for this contention. If you assert no such contention, respond to this request with "None."

Request for Production No. 31: Insofar as you denied any part of the Claim, identify documents 1) supporting this denial and 2) evidencing the explanations(s) offered and delivered by you to Plaintiff(s) regarding this denial.

Certified Document Number: 86762573 - Page 22 of 29

Request for Production No. 32: Produce documents, which identify any depreciation method, formula, program, or table utilized by you in underwriting the Policy.

Request for Production No. 33: Produce documents, which identify any depreciation method, formula, program, or table utilized by you in adjusting, paying, or denying the Claim.

Request for Production No. 34: Produce all oral and written statements related to Plaintiff(s), the Claim, or Subject Property.

Request for Production No. 35: Pursuant to the Tex. R. Civ. Evid., produce all documents evidencing criminal conviction, which you intend to use as evidence to impeach any party or witness.

Request for Production No. 36: Produce and identify any documents or materials made the specific basis of your response to any Interrogatory No. 2.

Request for Production No. 37: Produce any documents or materials made the specific basis of your response to any Interrogatory No. 4.

Request for Production No. 38: Produce any documents or materials made the specific basis of your response to any Interrogatory No. 5.

Request for Production No. 39: Produce any documents or materials made the specific basis of your response to any Interrogatory No. 6.

Request for Production No. 40: Produce any documents or materials made the specific basis of your response to any Interrogatory No. 7.

Request for Production No. 41: Produce any documents or materials made the specific basis of your response to any Interrogatory No. 10.

Request for Production No. 42: Produce any documents or materials made the specific basis of your response to any Interrogatory No. 11.

Request for Production No. 43: Produce any documents or materials made the specific basis of your response to any Interrogatory No. 12.

Request for Production No. 44: Produce any documents or materials made the specific basis of your response to any Interrogatory No. 14.

Request for Production No. 45: Unless you unequivocally admitted Request for Admission No. 3, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 46: Unless you unequivocally admitted Request for Admission No. 7, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 47: Unless you unequivocally admitted Request for Admission No. 8, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 48: Unless you unequivocally admitted Request for Admission No. 10, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 49: Unless you unequivocally admitted Request for Admission No. 12, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 50: Unless you unequivocally admitted Request for Admission No. 13, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 51: Unless you unequivocally admitted Request for Admission No. 14, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 52: Unless you unequivocally admitted Request for Admission No. 15, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 53: Unless you unequivocally admitted Request for Admission No. 16, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 54: Unless you unequivocally admitted Request for Admission No. 17, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 55: Unless you unequivocally admitted Request for Admission No. 19, produce all documents and materials you contend support your denial and/or refusal to admit said request.

Request for Production No. 56: If you declared the Event as a "Catastrophe" or "Cat," produce documents relevant to this declaration.

Request for Production No. 57: Produce any reinsurance Policy relevant to coverage for the Claim, or groups of claims, which include the Claim.

Certified Document Number: 86762573 - Page 24 of 29

Request for Production No. 58: Produce all communication, reports, periodic reports, assessments, reserve-related communications, with any reinsurer regarding the Claim, or groups of claims, which include the Claim.

Request for Production No. 59: Produce all communication with any Attorney, regarding the Plaintiff, Subject Property, or Claim, which predates your receipt of any letter of representation relative to the Claim.

Request for Production No. 60: Produce all communication, between your Attorney(s) and other attorney(s) who/whom does/do not represent You, regarding the Plaintiff, the Subject Property, or Claim, or groups of claims, which do include, or may include the Claim.

Request for Production No. 61: Produce the resume or CV for all consultants, engineers, experts, which you consulted, utilized or retained regarding the Claim.

## **PLAINTIFF'S INTERROGATORIES TO DEFENDANT**

Interrogatory No. 1: Identify and describe the name and/or entity name, title, address, telephone number, employer, and description of their involvement in the Claim for any person or entity that:

a)   Participated Claims assessment, handling, adjustment, or payment;
b)   Communicated with you regarding the Plaintiff, Subject Property, or Claim;

Interrogatory No. 2: If you contend the Policy does not cover some or all of the damages to the Subject Property, describe and/or identify:

a)   The scope, cause, and origin of damages you contend is/was not covered; and,
b)   All Policy-based term(s), exclusion(s), or the contractual bases for your contention(s) as to the absence of and/or exclusion from coverage for part or all of the damage(s);
c)   The factual basis for your assertion (if any) in the absence of coverage, covered damages, or excluded coverage; and,
d)   All documents supporting your response a), b) and c).

Interrogatory No. 3: Describe the history of any estimates obtained by You and/or provided to Plaintiff(s), including without limitation all drafts, revisions, and reconciliations of any estimates.

Interrogatory No. 4: If you contend that Plaintiff(s) failed to give you proper and/or timely notice of the Claim, describe the details of this contention and how any alleged failure prejudiced

your ability to adjust the Claim. Include in this description and/or identify documents sufficient to describe or explain:

a) The date of when you first received notice of the Claim;
b) The date you first discussed the Claim with Plaintiff(s) if different from your response to a) above;
c) The date you inspected first inspected the property;
d) The date in which you delivered your Claim response to Plaintiff;
e) The method you used to communicate your conclusions.

In the event, one or more of the proceeding items of information exists, or is made the part basis for your assertions relative to any alleged failure of proper or timely notice, explain this in your response.

Interrogatory No. 5: Do you contend Plaintiff(s) failed to provide you any requested information or materials, which prejudiced your ability to evaluate and adjust the Claim? If so, explain your assertion in this regard and include:

a) A detailed description of how this alleged failure precluded your evaluation and adjustment of the Claim;
b) A description of whether or not you actually did evaluate, adjust and respond to the Claim.

Interrogatory No. 6: If you contend Plaintiff's acts or omissions voided, nullified, waived or breached the Policy, state the factual basis of this contention and identify all documents and policy terms which you assert support this contention.

Interrogatory No. 7: If you contend Plaintiff(s) failed to satisfy condition precedent or any covenant contained in the Policy, explain the basis of this contention.

Interrogatory No. 8: Identify all requests for material and information sought by You regarding the Claim.

Interrogatory No. 9: Identify all correspondence sent by You which explains any part of the Claim which you denied, or explains your Damage estimate.

Interrogatory No. 10: If you anticipated litigation in relation to the Claim, identify this date and explain the specific basis of this contention, identifying all documents, which support this contention.

Interrogatory No. 11: If you applied depreciation as part of your claims adjustment process, explain your method in detail. Identify all components of the Subject Property, by component

name and age, to which you applied depreciation along with explaining the method You applied for each. If you applied the same level of depreciation, to all component parts of the Subject Property as a whole, explain this in your answer. If this method differs from depreciation applied in underwriting the policy or any other context, explain the difference. If this method is contained in any written policy, instruction or guideline, identify all such documents.

Interrogatory No. 12: Describe whether you applied depreciation to labor or any repair related activity (or any portion thereof). Include amounts involved, the method applied and the name and/or insurance industry name for the method.

Interrogatory No. 13: In lieu of additional requests for admission, identify facts, which you will agree to admit and/or agree to jointly stipulate, in order to streamline litigation and reduce costs. This might include, without limitation, correct party information, date of loss, loss coverage, type of coverage (for example ACV vs. RCV), coverage limits.

Interrogatory No. 14: Identify all documents which support each defense and/or affirmative defense described in your Original Answer, including all amendments thereto.

Interrogatory No 15: As it relates to your response to Request for Production No. 20, explain how or why the documents produced in response to this request, support your assertion(s) (if any) that Plaintiff(s):

a) Sustained no damages whatsoever;
b) Sustained no damages caused by the Event;
c) Sustained damage, caused by some other event or cause;
d) Sustained no covered loss under the Policy.

Interrogatory No. 16: Identify, and describe the work performed, or information provided by each person(s) or entities who/whom/that inspected, assessed causation, assessed damages, inclusive of any person(s) who provided You with any estimate of cost to repair damages for the Claim, or provided you with information considered by You as part of Your assessment of the Claim. In your response, segregate between and/or explain the role of each:

a)      Person(s) employed by you
b)      Person(s) / entities with whom you engaged or contracted for relevant services; and,
c)      Person(s) or entities not employed, engaged, or contracted by You.

Interrogatory No. 17: Identify and describe the name, title, address, telephone number, employer, description of their involvement in the Claim for any person or entity that participated in the creation of Your responses to these interrogatories.

**PLAINTIFF'S REQUEST FOR ADMISSIONS TO DEFENDANT**

Certified Document Number: 86762573 - Page 27 of 29

Request for Admission No. 1: Admit the Policy is an Actual Cash Value or "ACV" policy.

Request for Admission No. 2: Admit the Policy is a Replacement Cost Value or "RCV" policy.

Request for Admission No. 3: Admit that aside from the Claim, Plaintiff(s) has/have submitted no previous claim for damages to the subject Property.

Request for Admission No. 4: Admit You reinsured the Policy.

Request for Admission No. 5: Admit You created or hired someone to create a damage repair estimate for Plaintiff's Claim.

Request for Admission No. 6: Admit You did not create or hire someone to create a damage repair estimate for Plaintiff's Claim.

Request for Admission No. 7: Admit one or more persons who participated in the adjustment of the Claim did not visit or physically inspect the Subject Property.

Request for Admission No. 8: Admit You depreciated labor as part of Your estimate.

Request for Admission No. 9: Admit You denied part or all of Plaintiff's Claim based on the untimeliness of the Claim.

Request for Admission No. 10: Admit Plaintiff(s) timely reported the Claim.

Request for Admission No. 11: Admit You denied the Claim in whole or in part because you contend the Claim is not covered by the Policy.

Request for Admission No. 12: Admit You did not request a sworn proof of loss from the Plaintiff(s).

Request for Admission No. 13: Admit You did not request a sworn proof of loss from any insured person other than the Plaintiff(s).

Request for Admission No. 14: Admit a windstorm caused the damages reported in the Claim.

Request for Admission No. 15: Admit  are a Covered Peril under the Policy.

Request for Admission No. 16: Admit a  caused the damages reported in the Claim.

Request for Admission No. 17: Admit  are a Covered Peril under the Policy.

Request for Admission No. 18: Admit the Policy was in full force and effect on the Date of Loss.

Request for Admission No. 19:  Admit Plaintiff(s) paid all required premiums under the policy as of the Date of Loss.

Request for Admission No. 20:  Admit You set reserves relative to the Claim.

Certified Document Number: 86762573 - Page 29 of 29



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 13, 2020

Certified Document Number:        86762573

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 |
www.hcdistrictclerk.com

## Civil Process Pick-Up Form

CAUSE NUMBER: 2019-58469

ATY___X___  CIV_____  COURT __11th__

### REQUESTING ATTORNEY/FIRM NOTIFICATION

*ATTORNEY: Walker, Stephen   PH: (713) 277-7838

*CIVIL PROCESS SERVER: _____   BOX: _____

*PH: _____

*PERSON NOTIFIED SVC READY: _____

Type of Service Document: CIT            Tracking Number 73662053
Type of Service Document: _____      Tracking Number _____
Type of Service Document: _____      Tracking Number _____
Type of Service Document: _____      Tracking Number _____
Type of Service Document: _____      Tracking Number _____

Process papers prepared by: **Brianna J. Denmon**

Date: August 26 2019   30 days waiting 9 - 25 - 19

*Process papers released to: Gabriel Perez
                              (PRINT NAME)

713 - 277 - 7838

*(CONTACT NUMBER)   Lisa Thomas (SIGNATURE)

*Process papers released by: _____

Lisa Thomas (PRINT NAME)

_____
(SIGNATURE)

*Date: 9 - 18 , 2019   Time: 10:05  (AM) / PM

RECORDER'S MEMORANDUM
This Instrument is of poor quality
at the time of imaging
Revised 12-15-2014

Certified Document Number: 87208569 - Page 1 of 1





I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 13, 2020

Certified Document Number:        87208569

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

11/15/2019 2:54 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 38542301
By: Lewis John-Miller
Filed: 11/15/2019 2:54 PM

## CAUSE NUMBER 2019-58469

| | | |
|---|---|---|
| **MINH NGUYEN** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **11th JUDICIAL DISTRICT** |
| | § | |
| **GEOVERA SPECIALTY** | § | |
| **INSURANCE COMPANY** | § | |
| *Defendant* | § | **OF HARRIS COUNTY, TEXAS** |

## ORIGINAL ANSWER AND AFFIRMATVE DEFENSES OF DEFENDANT
## GEOVERA SPECIALTY INSURANCE COMPANY

TO THE HONORABLE JUDGE OF SAID COURT:

GeoVera Specialty Insurance Company ("Defendant"), files this Original Answer and Affirmative Defenses of Defendant in the above-entitled and numbered cause, pursuant to Texas Rule of Civil Procedure 92, and would respectfully show the Court:

### I.
### GENERAL DENIAL

Pursuant to Texas Rules of Civil Procedure, Rule 92, Defendant generally denies the material allegations contained in Plaintiff's Original Petition and demands strict proof by a preponderance of the evidence, or other applicable standard of proof, on all of Plaintiff's claims, if Plaintiff can do so.

### II.
### DISCOVERY CONTROL PLAN: LEVEL TWO

The guidelines and constraints of Level Two classification under the Texas Rules of Civil Procedure 190 and any docket control order issued by the Court are proper and controlling for this lawsuit. Plaintiff asserts in the Petition that discovery is to be conducted under Level Two. Defendant agrees that Level Two is appropriate for this matter.

Certified Document Number: 88121520 - Page 1 of 14

### III.
### AFFIRMATIVE DEFENSES

#### FIRST DEFENSE
#### Failure to State a Claim

Plaintiff's causes of action are barred in whole or in part because Plaintiff failed to state a claim on which relief can be granted. Plaintiff failed to describe how the insurance policy applies when there is no remaining covered cause of loss.

#### SECOND DEFENSE
#### Losses Not Insured Against

GeoVera Specialty Insurance Company issued homeowners' policy number GC60026790 (the "Policy") to Plaintiff effective July 28,2017 to July 28, 2018. The Policy contains certain provisions concerning Perils Insured Against, which provide in pertinent part:

## HOMEOWNERS 3 – SPECIAL FORM
## SECTION I – PERILS INSURED AGAINST
### A. COVERAGE A – DWELLING AND COVERAGE B –
### OTHER STRUCTURES

1. WE INSURE AGAINST DIRECT PHYSICAL LOSS TO PROPERTY DESCRIBED IN COVERAGES A AND B.
2. WE DO NOT INSURE, HOWEVER, FOR LOSS:
EXCLUDED UNDER SECTION I – EXCLUSIONS;
    c. CAUSED BY:
    (6) ANY OF THE FOLLOWING:
    (A) WEAR AND TEAR, MARRING, DETERIORATION;
    (B) MECHANICAL BREAKDOWN, LATENT DEFECT, INHERENT VICE OR ANY QUALITY IN PROPERTY THAT CAUSES IT TO DAMAGE OR DESTROY ITSELF;
    (F) SETTLING, SHRINKING, BULGING OR EXPANSION, INCLUDING RESULTANT CRACKING, OF BULKHEADS, PAVEMENTS, PATIOS, FOOTINGS, FOUNDATIONS, WALLS, FLOORS, ROOFS OR CEILINGS;

2

Certified Document Number: 88121520 - Page 2 of 14

### THIRD DEFENSE
### Loss Caused by Mold Excluded or Limited

The Policy issued to Plaintiff contains a provision concerning Exclusions from coverage. The Policy provides in pertinent part:

## SECTION I – EXCLUSIONS

**A.** WE DO NOT INSURE FOR LOSS CAUSED DIRECTLY OR INDIRECTLY BY ANY OF THE FOLLOWING. SUCH LOSS IS EXCLUDED REGARDLESS OF ANY OTHER CAUSE OR EVENT CONTRIBUTING CONCURRENTLY OR IN ANY SEQUENCE TO THE LOSS. THESE EXCLUSIONS APPLY WHETHER OR NOT THE LOSS EVENT RESULTS IN WIDESPREAD DAMAGE OR AFFECTS A SUBSTANTIAL AREA.

### 16. SMOG, RUST OR OTHER CORROSION, "MOLD OR OTHER FUNGI", WET OR DRY ROT OR "BACTERIA"[1]

SMOG, RUST, OR OTHER CORROSION, "MOLD OR OTHER FUNGI", WET OR DRY ROT, OR "BACTERIA" MEANS THE PRESENCE, GROWTH, PROLIFERATION, SPREAD OR ANY ACTIVITY OF SMOG, RUST OR OTHER CORROSION, "MOLD OR OTHER FUNGI", WET OR DRY ROT, OR "BACTERIA".

LOSS CAUSED BY SMOG, RUST, OR OTHER CORROSION, "MOLD OR OTHER FUNGI", WET OR DRY ROT, OR "BACTERIA" RESULTING FROM A PERIL NAMED UNDER **SECTION I – PERILS INSURED AGAINST**, PARAGRAPH **B. COVERAGE C – PERSONAL PROPERTY** IS COVERED. HOWEVER, SUCH LOSS IS SUBJECT TO THE "PER POLICY PERIOD MOLD COMBINED TOTAL SUBLIMIT".

Additionally, the following definitions are provided:

### DEFINITIONS

**20.** "MOLD OR OTHER FUNGI" MEANS:
    **A.** ANY TYPE OF MOLD OR MILDEW;
    **B.** ANY OTHER TYPE OR FORM OF FUNGUS; OR
    **C.** ANY MYCOTOXIN, SPORE, SCENT, OR BY-PRODUCT PRODUCED OR RELEASED BY SUCH MOLD, MILDEW OR OTHER FUNGUS.
**23.** "PER POLICY PERIOD MOLD COMBINED TOTAL SUBLIMIT" MEANS THE $5,000 LIMIT OF LIABILITY THAT APPLIES TO THE COMBINED TOTAL OF ALL OF THE FOLLOWING WHICH OCCUR DURING ANY ONE POLICY PERIOD:
    **A.** WITH RESPECT TO SECTION **I**, COVERED LOSS CAUSED BY SMOG, RUST, OR OTHER CORROSION, "MOLD OR OTHER FUNGI", WET OR DRY ROT, OR "BACTERIA" RESULTING FROM A PERIL NAMED UNDER **SECTION I – PERILS INSURED AGAINST**, PARAGRAPH **B. COVERAGE C – PERSONAL PROPERTY**; AND...

---

[1] Amended by Endorsement US 03 55 (05-15) LIMITED SMOG, RUST, MOLD, ROT OR BACTERIA COVERAGE AND LIMITED SEEPAGE OR LEAKAGE COVERAGE

Certified Document Number: 88121520 - Page 3 of 14

Certified Document Number: 88121520 - Page 4 of 14

THIS COMBINED TOTAL $5,000 SUBLIMIT IS THE MOST WE'LL PAY REGARDLESS OF THE NUMBER OR TYPE OF COVERAGES THAT MAY APPLY, THE NUMBER OF PREMISES INSURED UNDER THIS POLICY, THE NUMBER OF PERSONS INJURED OR WHOSE PROPERTY IS DAMAGED, THE NUMBER OF "OCCURRENCES" OR CLAIMS MADE, OR THE NUMBER OR TYPE OF SMOG, RUST, OR OTHER CORROSION, "MOLD OR OTHER FUNGI", WET OR DRY ROT, OR "BACTERIA" THAT CAUSED THE LOSS, INJURY OR DAMAGE. THIS SUBLIMIT IS INCLUDED IN, BUT DOES INCREASE, THE MAXIMUM LIMITS OF LIABILITY UNDER SECTIONS **I** AND **II** OF YOUR POLICY AS SHOWN ON THE DECLARATIONS PAGE.

### FOURTH DEFENSE
### Loss Caused by Water Excluded

The Policy issued to Plaintiffs contains a provision concerning Exclusions from coverage. The Policy provides in pertinent part:

## SECTION I – EXCLUSIONS

A. WE DO NOT INSURE FOR LOSS CAUSED DIRECTLY OR INDIRECTLY BY ANY OF THE FOLLOWING. SUCH LOSS IS EXCLUDED REGARDLESS OF ANY OTHER CAUSE OR EVENT CONTRIBUTING CONCURRENTLY OR IN ANY SEQUENCE TO THE LOSS. THESE EXCLUSIONS APPLY WHETHER OR NOT THE LOSS EVENT RESULTS IN WIDESPREAD DAMAGE OR AFFECTS A SUBSTANTIAL AREA.

**3. WATER**

THIS MEANS:

**A.** FLOOD, SURFACE WATER, WAVES, INCLUDING TIDAL WAVE AND TSUNAMI, TIDES, TIDAL WATER, OVERFLOW OF ANY BODY OF WATER, OR SPRAY FROM ANY OF THESE, ALL WHETHER OR NOT DRIVEN BY WIND, INCLUDING STORM SURGE;

**B.** WATER WHICH:

**(1)** BACKS UP THROUGH SEWERS OR DRAINS; OR

**(2)** OVERFLOWS OR IS OTHERWISE DISCHARGED FROM A SUMP, SUMP PUMP OR RELATED EQUIPMENT;

**C.** WATER BELOW THE SURFACE OF THE GROUND, INCLUDING WATER WHICH EXERTS PRESSURE ON, OR SEEPS, LEAKS, OR FLOWS THROUGH A BUILDING, SIDEWALK, DRIVEWAY, PATIO, FOUNDATION, SWIMMING POOL OR OTHER STRUCTURE; OR

**D.** WATERBORNE MATERIAL CARRIED OR OTHERWISE MOVED BY ANY OF THE WATER REFERRED TO IN **A.3.A.** THROUGH **A.3.C.** OF THIS EXCLUSION.

4

THIS EXCLUSION **A.3.** APPLIES REGARDLESS OF WHETHER ANY OF THE ABOVE, IN **A.3.A.** THROUGH **A.3.D.**, IS CAUSED BY AN ACT OF NATURE OR IS OTHERWISE CAUSED.

THIS EXCLUSION **A.3.** APPLIES TO, BUT IS NOT LIMITED TO, ESCAPE, OVERFLOW OR DISCHARGE, FOR ANY REASON, OF WATER OR WATERBORNE MATERIAL FROM A DAM, LEVEE, SEAWALL OR ANY OTHER BOUNDARY OR CONTAINMENT SYSTEM.

HOWEVER, DIRECT LOSS BY FIRE, EXPLOSION OR THEFT RESULTING FROM ANY OF THE ABOVE IN **A.3.A.** THROUGH **A.3.D.**, IS COVERED.

## FIFTH DEFENSE
### Loss Caused by Neglect Excluded

The Policy issued to Plaintiff contains a provision concerning Exclusions from coverage. The Policy provides in pertinent part:

## SECTION I – EXCLUSIONS

A. WE DO NOT INSURE FOR LOSS CAUSED DIRECTLY OR INDIRECTLY BY ANY OF THE FOLLOWING. SUCH LOSS IS EXCLUDED REGARDLESS OF ANY OTHER CAUSE OR EVENT CONTRIBUTING CONCURRENTLY OR IN ANY SEQUENCE TO THE LOSS. THESE EXCLUSIONS APPLY WHETHER OR NOT THE LOSS EVENT RESULTS IN WIDESPREAD DAMAGE OR AFFECTS A SUBSTANTIAL AREA.

**5. NEGLECT**

NEGLECT MEANS NEGLECT OF AN "INSURED" TO USE ALL REASONABLE MEANS TO SAVE AND PRESERVE PROPERTY AT AND AFTER THE LOSS.

## SIXTH DEFENSE
### Loss Caused by Weather Conditions Excluded

The Policy issued to Plaintiff contains a provision concerning Exclusions from coverage. The Policy provides in pertinent part:

B. WE DO NOT INSURE FOR LOSS TO PROPERTY DESCRIBED IN COVERAGES **A** AND **B** CAUSED BY ANY OF THE FOLLOWING. HOWEVER, ANY ENSUING LOSS TO PROPERTY DESCRIBED IN COVERAGES **A** AND **B** NOT PRECLUDED BY ANY OTHER PROVISION IN THIS POLICY IS COVERED.

**1.** WEATHER CONDITIONS. HOWEVER, THIS EXCLUSION ONLY APPLIES IF WEATHER CONDITIONS     CONTRIBUTE IN ANY WAY WITH A CAUSE OR EVENT EXCLUDED IN **A.** ABOVE TO PRODUCE THE LOSS.

5

Certified Document Number: 88121520 - Page 5 of 14

## SEVENTH DEFENSE
## Loss Caused by Acts or Decisions Excluded

The Policy issued to Plaintiff contains a provision concerning Exclusions from coverage. The Policy provides in pertinent part:

> B. WE DO NOT INSURE FOR LOSS TO PROPERTY DESCRIBED IN COVERAGES **A**
> AND **B** CAUSED BY ANY OF THE FOLLOWING. HOWEVER, ANY ENSUING LOSS
> TO PROPERTY DESCRIBED IN COVERAGES **A** AND **B** NOT PRECLUDED BY ANY
> OTHER PROVISION IN THIS POLICY IS COVERED.
>> **2.** ACTS OR DECISIONS, INCLUDING THE FAILURE TO ACT OR DECIDE,
>> OF ANY PERSON, GROUP, ORGANIZATION OR GOVERNMENTAL BODY.

## EIGHTH DEFENSE
## Loss Caused by Faulty Workmanship or Maintenance Excluded

The Policy issued to Plaintiff contains a provision concerning Exclusions from coverage. The Policy provides in pertinent part:

> B. WE DO NOT INSURE FOR LOSS TO PROPERTY DESCRIBED IN COVERAGES **A**
> AND **B** CAUSED BY ANY OF THE FOLLOWING. HOWEVER, ANY ENSUING LOSS
> TO PROPERTY DESCRIBED IN COVERAGES **A** AND **B** NOT PRECLUDED BY ANY
> OTHER PROVISION IN THIS POLICY IS COVERED.
>> **3.** FAULTY, INADEQUATE, OR DEFECTIVE MAINTENANCE:
>>> **A.** PLANNING, ZONING, DEVELOPMENT, SURVEYING, SITING;
>>> **B.** DESIGN, SPECIFICATIONS, WORKMANSHIP, REPAIR,
>>> CONSTRUCTION, RENOVATION OR REMODELING; OR
>>> **C.** MATERIALS USED IN REPAIR, CONSTRUCTION, RENOVATION, OR
>>> REMODELING; OR
>>> **D.** MAINTENANCE;
>>> OF PART OR ALL OF ANY PROPERTY WHETHER ON OR OFF THE
>>> "RESIDENCE PREMISES".

## NINETH DEFENSE
## Storm Created Opening Limitation

The Policy issued to Plaintiff contains a provision requiring a storm created opening. The Policy provides in pertinent part:

Certified Document Number: 88121520 - Page 6 of 14

6

**B. COVERAGE C – PERSONAL PROPERTY**

WE INSURE FOR DIRECT PHYSICAL LOSS TO THE PROPERTY DESCRIBED IN COVERAGE **C** CAUSED BY ANY OF THE FOLLOWING PERILS UNLESS THE LOSS IS EXCLUDED IN SECTION **I** – EXCLUSIONS.

**2. WINDSTORM OR HAIL**
* * *

THIS PERIL DOES NOT INCLUDE LOSS TO THE PROPERTY CONTAINED IN A BUILDING CAUSED BY RAIN, SNOW, SLEET, SAND OR DUST UNLESS THE DIRECT FORCE OF WIND OR HAIL DAMAGES THE BUILDING CAUSING AN OPENING IN A ROOF OR WALL AND THE RAIN, SNOW, SLEET, SAND OR DUST ENTERS THROUGH THIS OPENING.

**TENTH DEFENSE**
**DUTIES AFTER LOSS**

The Policy issued to Plaintiff contains a provision requiring the insured to comply

with certain duties after the loss. The Policy provides in pertinent part:

## SECTION I - CONDITIONS

**C. DUTIES AFTER LOSS**

IN CASE OF LOSS TO COVERED PROPERTY, WE HAVE NO DUTY TO PROVIDE COVERAGE UNDER THIS POLICY IF THE FAILURE TO COMPLY WITH THE FOLLOWING DUTIES IS PREJUDICIAL TO US. THESE DUTIES MUCH BE PERFORMED EITHER BY YOU, AN "INSURED" SEEKING COVERAGE OR A REPRESENTATIVE OF EITHER:

**1.** GIVE PROMPT NOTICE TO US OR OUR AGENT;

**4.** PROTECT THE PROPERTY FROM FURTHER DAMAGE. IF REPAIRS TO THE PROPERTY ARE REQUIRED, YOU MUST:

**A.** MAKE REASONABLE AND NECESSARY REPAIRS TO PROTECT THE PROPERTY; AND

**B.** KEEP AN ACCURATE RECORD OF EXPENSES;

**5.** COOPERATE WITH US IN THE INVESTIGATION OF A CLAIM;

**8.** SEND TO US WITHIN **60** DAYS AFTER OUR REQUEST, YOUR SIGNED, SWORN PROOF OF LOSS WHICH SETS FORTH TO THE BEST OF YOUR KNOWLEDGE AND BELIEF;

**A.** THE TIME AND CAUSE OF LOSS;

**B.** THE INTERESTS OF ALL "INSUREDS" AND ALL OTHERS IN THE PROPERTY INVOLVED AND ALL LIENS ON THE PROPERTY.

**C.** OTHER INSURANCE WHICH MAY COVER THE LOSS;

**D.** CHANGES IN TITLE OR OCCUPANCY OF THE PROPERTY DURING THE TERM OF THE POLICY;

Certified Document Number: 88121520 - Page 7 of 14

E. Specifications of damaged buildings and detailed repair estimates;

F. The inventory of damaged personal property described in **6.** above;

G. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

## ELEVENTH DEFENSE
## APPRAISAL CLAUSE

The Policy issued to Plaintiff contains a provision requiring either party to submit to appraisal upon a demand. GeoVera demanded appraisal and the appraisal is ongoing. The Policy provides in pertinent part:

### SECTION I - CONDITIONS
### F. Appraisal[2]

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within **20** days after receiving a written demand from the other and notify the other of the appraiser's name and contact information. If the appraisers cannot agree on the amount of loss or the actual cash value in accord with this condition, the two appraisers will choose a competent and impartial umpire. If the appraisers cannot agree upon an umpire within **15** days, you and we shall jointly ask a judge of a court of record in the judicial district where the "residence premises" is located to choose an umpire. Neither you nor we may assign the right to demand appraisal to anyone.

The appraisers will separately set the amount of loss and provide a written appraisal report specifically describing:

A. Each item of property being appraised;

B. The types or kinds of damage to each item of property;

C. The extent of the damage to each item of property;

D. The estimated costs of repair or replacement of each item of property;

---

[2] As Amended by the Master Endorsement US 04 42 (03-15).

Certified Document Number: 88121520 - Page 8 of 14

E. THE ESTIMATED AMOUNT OF DEPRECIATION AND/OR OBSOLESCENCE OF EACH ITEM OF PROPERTY; AND

F. THE ACTUAL CASH VALUE OF EACH ITEM OF PROPERTY.

IF THE APPRAISERS SUBMIT A WRITTEN REPORT OF AN AGREEMENT TO US, THE AMOUNT AGREED UPON WILL BE THE AMOUNT OF LOSS. IF THE APPRAISERS CANNOT AGREE, THEY WILL EACH SUBMIT THEIR DIFFERENCES TO THE UMPIRE SPECIFICALLY DESCRIBING THE DIFFERENCES AND THE AMOUNT ATTRIBUTABLE TO EACH DIFFERENCE. A DECISION AGREED TO BY ANY TWO WILL SET THE AMOUNT OF LOSS.

EACH PARTY WILL:
1. PAY ITS OWN APPRAISER;
2. PAY THE COSTS OF EXPERTS OR ANY OTHER EXPENSES NOT MUTUALLY AGREED IN ADVANCE TO SHARE; AND
3. BEAR THE EXPENSES OF THE APPRAISAL EQUALLY.

IF THERE IS AN APPRAISAL:
A. YOU AND WE AGREE THAT ANY SUIT FOR OR INVOLVING A DISAGREEMENT IN THE AMOUNT OF LOSS CLAIMED UNDER THIS POLICY SHALL BE ABATED ON THE DEMAND FOR APPRAISAL BY EITHER YOU OR US UNTIL AFTER AN APPRAISAL AWARD IS ISSUED IN ACCORD WITH THIS CONDITION; AND

B. WE RETAIN THE RIGHT TO APPLY THE POLICY COVERAGES, TERMS AND CONDITIONS UNDER THIS POLICY TO ANY APPRAISAL AWARD.

THE TWO APPRAISERS WILL CHOOSE AN UMPIRE. IF THEY CANNOT AGREE UPON AN UMPIRE WITHIN 15 DAYS, YOU OR WE MAY REQUEST THAT THE CHOICE BE MADE BY A JUDGE OF A COURT OF RECORD IN THE STATE WHERE THE "RESIDENCE PREMISES" IS LOCATED. THE APPRAISERS WILL SEPARATELY SET THE AMOUNT OF LOSS. IF THE APPRAISERS SUBMIT A WRITTEN REPORT OF AN AGREEMENT TO US, THE AMOUNT AGREED UPON WILL BE THE AMOUNT OF LOSS. IF THEY FAIL TO AGREE, THEY WILL SUBMIT THEIR DIFFERENCES TO AN UMPIRE. A DECISION AGREED TO BY ANY TWO WILL SET THE AMOUNT OF LOSS.

EACH PARTY WILL:
1. PAY ITS OWN APPRAISER;
2. BEAR THE EXPENSES OF THE APPRAISAL AND UMPIRE EQUALLY.

Certified Document Number: 88121520 - Page 9 of 14

### TWELFTH DEFENSE
### POLICY INCORPORATED BY REFERENCE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff seeks to establish coverage that is expressly excluded by any of the terms, conditions, limitations, exclusions, and endorsements therein, all of which are incorporated by reference as if fully set herein. Plaintiff's claims are barred, in whole or in part, to the extent that the claims asserted are not covered within the meaning of the Policy.

### THIRTEENTH DEFENSE
### LIMIT OF LIABILITY

To the extent GeoVera may have any liability under the Policy, which is expressly denied, then that liability is subject to the limitations of liability, aggregates and/or deductibles contained in the Policy or in any endorsement, all of which are incorporated by reference as if fully set herein.

### FOURTEENTH DEFENSE
### OTHER INSURANCE

Any liability under the Policy is excluded or reduced to the extent that the insureds have other insurance applicable to the claim.

### FIFTEENTH DEFENSE
### CREDITS AND OFFSETS

Any liability under the Policy is excluded or reduced to the extent payment has already been made to Plaintiff for the alleged damages.

### SIXTEENTH DEFENSE
### FAILURE TO MITIGATE

Plaintiff's claims are barred for failure to exercise reasonable care and/or mitigate their alleged damages.

Certified Document Number: 88121520 - Page 10 of 14

### SEVENTEENTH DEFENSE
#### CONTINUED DUTY TO MITIGATE

GeoVera affirmatively alleges that Plaintiff is under a continuing duty to mitigate the alleged damages.

### EIGHTEENTH DEFENSE
#### FAILURE TO SATISFY CONDITIONS PRECEDENT

Plaintiff did not plead with specificity, the performance or occurrence of all conditions precedent to recovery under the Policy. Defendant demands strict proof that each and every condition precedent was performed or has occurred.

### NINETEENTH DEFENSE
#### PAYMENT/ACCORD AND SATISFACTION

Defendant further affirmatively pleads the defenses of payment, and accord and satisfaction. Any previous payments to Plaintiff are a defense to Plaintiff's claims for damages. Any previous payments to Plaintiff are an accord and satisfaction of Plaintiff's damages to the extent of those payments.

### TWENTIETH DEFENSE
#### RELIANCE ON CASE LAW

Defendant reasonably relied on case law from the state and federal courts of Texas, which supports Defendant's interpretation of the Policy as it relates to Plaintiff's claims.

### TWENTY-FIRST DEFENSE
#### BONA FIDE CONTROVERSY

A bona fide controversy existed and continues to exist concerning Plaintiff's entitlement to insurance benefits from GeoVera. GeoVera and its employees, agents, representatives, and adjusters are entitled to value claims differently from GeoVera's policyholders without facing bad faith or extra-contractual liability. GeoVera would show that a bona fide controversy existed regarding the scope of any allegedly covered loss, the

11

value of such loss and/or whether and the extent to which any asserted loss was the result of a covered occurrence or occurrences.

### TWENTY-SECOND DEFENSE
### DUE PROCESS

To the extent that Plaintiff prays for punitive, exemplary, or otherwise enhanced damages GeoVera invokes its rights under the Due Process Clause of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment of the United States Constitution.

### TWENTY-THIRD DEFENSE
### EQUAL PROTECTION

To the extent that Plaintiff prays for punitive, exemplary, or otherwise enhanced damages such request should be denied because it violates the Equal Protection Clause guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the provisions of the Eighth Amendment to the United States Constitution.

### TWENTY-FOURTH DEFENSE
### ABATEMENT

This matter is currently in appraisal. GeoVera requests that this case be abated until thirty days after the appraisal award has been rendered.

### TWENTY-FIFTH DEFENSE
### RIGHT TO AMEND

GeoVera further reserves the right to amend this answer to assert any additional defenses or any other applicable terms, provisions, exclusions, limitations or conditions of the Policy that may become apparent during GeoVera's ongoing investigation and discovery.

**WHEREFORE,** Defendant GeoVera Specialty Insurance Company prays that, on final trial and hearing, Plaintiff takes nothing, and that Defendant recover its costs, fees, and

Certified Document Number: 88121520 - Page 12 of 14

expenses, and for such other further relief to which Defendant and may show itself justly entitled, both at law and in equity.

Respectfully submitted,

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD,
A LAW CORPORATION

By: /s/ Christine R. Edwards
    Christine R. Edwards
    Texas Bar No. 24107329
    cedwards@lawla.com

801 Travis Street, Suite 1800
Houston, Texas 77002
Telephone:  (713) 222-1990
Facsimile:  (713) 222-1996

ATTORNEY FOR DEFENDANT GEOVERA
SPECIALTY INSURANCE COMPANY

Certified Document Number: 88121520 - Page 13 of 14

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above pleading has been forwarded via electronic filing and/or facsimile, on this the 15th day of November, 2019 to:

Anthony G. Buzbee                              *Via E-File*
Christopher J. Leavitt
THE BUZBEE LAW FIRM
JP Morgan Chase Tower
600 Travis Street, Suite 7300
Houston, TX  77002
Tel: (713) 223-5393
Fax: (713) 223-5909
tbuzbee@txattorneys.com
cleavitt@txattorneys.com

Stephen R. Walker                              *Via E-File*
Gregory J. Finney
Juan A. Solis
LAW OFFICES OF MANUEL SOLI, PC
6657 Navigation Blvd.
Houston, TX  77011
Tel: (713) 277-7838
Fax: (281) 377-3924
swalker@manuelsolis.com
gfinney@manuelsolis,com
jusolis@manuelsolis.com

/s/ *Christine R. Edwards*
_____
Christine R. Edwards

Certified Document Number: 88121520 - Page 14 of 14



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this  February 13, 2020

Certified Document Number:          88121520

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

11/19/2019 4:33 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 38632896
By: Lewis John-Miller
Filed: 11/19/2019 4:33 PM

## CAUSE NUMBER 2019-58469

| | | |
|---|---|---|
| **MINH NGUYEN** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **11th JUDICIAL DISTRICT** |
| | § | |
| **GEOVERA SPECIALTY** | § | |
| **INSURANCE COMPANY** | § | |
| *Defendant* | § | **OF HARRIS COUNTY, TEXAS** |

### DEFENDANT GEOVERA SPECIALTY INSURANCE COMPANY'S
### UNOPPOSED MOTION TO ABATE

TO THE HONORABLE JUDGE OF SAID COURT:

GeoVera Specialty Insurance Company ("GeoVera" or "Defendant"), files this Unopposed

Motion to Abate the Litigation Pending the Outcome of the Appraisal, and would respectfully

show the Court as follows:

I.

### FACTUAL BACKGROUND

This lawsuit arises out of a dispute over an insurance claim made by Plaintiff for alleged

wind damage to her home following Tropical Storm Harvey.[1]

Defendant's policy provides for appraisal as a means for determining the amount of loss

when the parties are unable to agree to the amount of loss.[2]

The appraisal provision was timely invoked, and the parties have named their respective

appraisers.[3]

---

[1] Plaintiff's Original Petition at ¶15.
[2] *See* Policy No. GC60026790 issued by GeoVera Specialty Insurance Company to Minh T. Nguyen, effective 7/28/17 to 7/28/18, Master Endorsement US 04-42 (03-15), page 6 of 12; Exhibit 1, GeoVera/Nguyen000051.
[3] *See* Correspondence from Plaintiff's Counsel dated August 14, 2019 invoking the appraisal process; hereto attached as Exhibit 2. *See also* GeoVera's correspondence to Plaintiff's counsel agreeing to proceed with the appraisal process, dated August 27, 2019, hereto attached as Exhibit 3.

Certified Document Number: 88177671 - Page 1 of 5

II.

## ARGUMENT & AUTHORITIES

The case should be abated pending completion of appraisal. The GeoVera policy

requires abatement of the litigation during the appraisal process.

## APPRAISAL CLAUSE

The Policy issued to Plaintiffs contains a provision requiring either party to submit to

appraisal upon a demand. Plaintiff demanded appraisal and the appraisal is ongoing. The Policy

provides in pertinent part:

**SECTION I - CONDITIONS**
**F. APPRAISAL[4]**
\*\*\*

IF THERE IS AN APPRAISAL:

A. YOU AND WE AGREE THAT ANY SUIT FOR OR INVOLVING A DISAGREEMENT
IN THE AMOUNT OF LOSS CLAIMED UNDER THIS POLICY SHALL BE ABATED ON
THE DEMAND FOR APPRAISAL BY EITHER YOU OR US UNTIL AFTER AN
APPRAISAL AWARD IS ISSUED IN ACCORD WITH THIS CONDITION; AND

B. WE RETAIN THE RIGHT TO APPLY THE POLICY COVERAGES, TERMS AND
CONDITIONS UNDER THIS POLICY TO ANY APPRAISAL AWARD.

In addition to the plain language contained in GeoVera's Policy, completion of appraisal

considered to be a condition precedent to filing suit on the insurance contract. *Woodward v. Liberty*

*Mut. Ins. Co.,* No. 3:09-CV-0228-G, 2010 WL 1186323, \*3 (N.D. Tex. Mar. 26, 2010). "When one

party to an insurance contract properly invokes the contract's appraisal clause...a court should

exercise its discretion to stay the suit pending completion of the appraisal." *Woodward,* 2010 WL

1186323 at \*3; *see also In re Slavonic Mut. Fire Ins. Ass'n,* 308 S.W.3d 556, 565 (Tex.App.—

Houston [14th Dist.] 2010, no pet. (*overruled on other grounds*)) ("[a] remedy to enforce a condition

precedent in its policy is abatement of the case"); *see also United Neurology, P A v. Hartford Lloyd's*

---

[4] As Amended by the Master Endorsement US 04 42 (03-15).

2

*Ins. Co.,* No. H-10-4248, 2012 WL 423417 (S.D. Tex. Feb. 8, 2012) (abating case while the appraisal goes forward); *Rice v. Certain Underwriters at Lloyds,* Civ. A No. H-10-4660, 2011 WL 240421 (S.D. Tex. Jan. 21, 2011) (abating case until appraisal process is complete); *Ford v. United Prop. & Cas. Ins. Co.,* No. 3:18-CV-00182, 2019 WL 1243871, at *3 (S.D. Tex. Mar. 18, 2019) (appraisal upheld and case abated pending completion); *James v Prop. & Cas. Co. of Hartford,* No. H-10-1998, 2011 WL 4067880, at *2 (S.D. Tex. Sep. 12, 2011) (proper remedy is to stay the proceedings because it increases judicial efficiency and lowers litigation costs).

Here, the appraisal provision of the policy was properly invoked, and the parties have agreed to participate in appraisal. Plaintiff requests that this court enforce the policy language requiring abatement, and abate this case pending completion of the appraisal process.

Furthermore, judicial economy is best served by staying this matter until such time as the appraisal process is complete. *See Slavonic,* 308 S.W.3d at 565; *see also Butler v. Prop. & Cas. Ins. Co. of Hartford,* Civ. A. No. H-10-3613, 2011 WL 2174965 (S.D. Tex. June 3, 2011) (holding that abatement of the case pending appraisal is appropriate and "in the interest of the efficient and inexpensive administration of justice"). Moving forward with discovery related to alleged breach of contract and extra-contractual causes of action when a condition precedent to the breach of contract claim has not been satisfied is a waste of the parties' and the Court's resources.

The purpose of appraisal is to determine the amount of loss and possibly resolve the case with "no attorneys, no lawsuit, no pleadings, and no hearings." *State Farm Lloyd's v. Johnson,* 290 S.W.3d 886, 894 (Tex. 2009) (noting that appraisals are less costly and faster than litigation, and often resolve disputes such as this one). Consistent with the purpose of appraisal (*i.e.* to prevent or reduce litigation efforts and costs), Plaintiff requests the Court to abate this lawsuit until thirty (30) days following the issuance of the appraisal award.

III.

## CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant prays this Court grant this Motion

to Abate pending completion of the appraisal process, and stay all proceedings, including but not

limited to, all discovery, pending motions and hearings, until thirty (30) days after Plaintiff and/or

Defendant advise the Court that the appraisal has been completed.

Respectfully submitted,

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD,
    A LAW CORPORATION

By: /s/ Christine R. Edwards
    Christine R. Edwards
    Texas Bar No. 24107329
    cedwards@lawla.com

801 Travis Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 222-1990
Facsimile: (713) 222-1996

ATTORNEY FOR DEFENDANT GEOVERA
SPECIALTY INSURANCE COMPANY

4

## CERTIFICATE OF CONFERENCE

I certify that my office contacted Plaintiff's counsel on November 19, 2019, to resolve this matter as set forth in this motion, and Plaintiff's counsel indicated Plaintiff is unopposed to the motion.

/s/ *Christine R. Edwards*
Christine R. Edwards

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above pleading has been forwarded via electronic filing and/or facsimile, on this the19[th] day of November, 2019 to:

Anthony G. Buzbee                                        *Via E-file*
Christopher J. Leavitt
THE BUZBEE LAW FIRM
JP Morgan Chase Tower
600 Travis Street, Suite 7300
Houston, TX 77002
Tel: (713) 223-5393
Fax: (713) 223-5909
tbuzbee@txattorneys.com
cleavitt@txattorneys.com

Stephen R. Walker                                        *Via E-File*
Gregory J. Finney
Juan A. Solis
LAW OFFICES OF MANUEL SOLI, PC
6657 Navigation Blvd.
Houston, TX 77011
Tel: (713) 277-7838
Fax: (281) 377-3924
swalker@manuelsolis.com
gfinney@manuelsolis,com
jusolis@manuelsolis.com

/s/ *Christine R. Edwards*

Christine R. Edwards

Certified Document Number: 88177671 - Page 5 of 5

5



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 13, 2020

Certified Document Number:          88177671

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Certified Document Number: 88177672 - Page 1 of 64

Insured

Loan #:   0055216774

MINH T NGUYEN

319 COVE CREEK LN
HOUSTON          TX 77042-1023

Mail To:   Insured

MINH T NGUYEN

319 COVE CREEK LN
HOUSTON          TX  77042-1023

Coverage is provided under this policy for
the residence located at:

319 COVE CREEK LN
HOUSTON          TX 77042-1023

Producer Name & Address   L2057
Phone: 281-858-4700

COSECHA VENTURE INC
4505 HIGHWAY 6 N STE 1300
HOUSTON          TX 77084

# GeoVera Specialty Insurance Company

### Residential Coverage
## RENEWAL DECLARATIONS

| Policy Number | Policy Term | Effective Date | Expiration Date |
|---|---|---|---|
| GC60026790 | 12 Month(s) | 07/28/17 | 07/28/18     12:01 AM<br>Standard Time at the Insured Premises. |

Insurance is provided only with respect to those specific limits of liability applicable thereto:

| POLICY COVERAGE(S) | LIMITS | | AMOUNT | ANNUAL |
|---|---|---|---|---|
| **Section I** | | Premium | | $2,485.00 |
| A - Dwelling | $432,000 | Policy Fee** | | $75.00 |
| B - Other Structures | $43,200 | Stamping Fee | | $3.92 |
| C - Personal Property | $216,000 | Company Underwriting Fee** | | $50.00 |
| D - Loss of Use | $86,400 | Tax | | $126.59 |
| **Section II** | | | | |
| E - Personal Liability | $500,000 | | | |
| F - Medical Payments to Others | $2,000 | **Total Amount** | | **$2,740 .51** |

**Fees are fully earned and nonrefundable.

| Section I Deductible | Windstorm/Hail Deductible |
|---|---|
| $4,320.00 | $8,640.00 |

Forms and endorsements made part of this policy at time of issuance:

| | | | |
|---|---|---|---|
| CLEL | 01-12 | US-01-42 08-15 | US-04-42 03-15 |
| HO-F-004 05-11 | *US-01-43 03-15 | US-04-90 03-15 | |
| HO-00-03 05-11 | *US-01-44 06-15 | *US-05-03 09-07 | |
| HO-04-65 05-11 | US-03-55 05-15 | US-05-05 03-15 | |
| HO-04-77 10-00 | US-04-35 03-15 | *USPRIV   05-15 | |



Certified Copy



1-3-19

Authorized Agent:

Paul McDonald
Logic Underwriters, Inc.
P.O. Box 600249
Dallas, Texas 75360-0249
Surplus Lines Agent, #8074

Countersigned by:

Countersigned at: Dallas, TX          07/28/17

THIS DECLARATION PAGE, WITH POLICY PROVISIONS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THE
ABOVE NUMBERED HOMEOWNERS POLICY

**FOR POLICY QUESTIONS OR CUSTOMER SERVICE, CALL YOUR PRODUCER AT 281-858-4700**

FTXD18-0731:7          FOR CLAIMS, CALL 1-800-631-6478 24 HOURS A DAY          Insured



EXHIBIT 1

GeoVera/Nguyen000001

# GeoVera Specialty Insurance Company

Policy Number   GC60026790            PAGE 2

**Mortgagee 1**
Loan # 0055216774

DITECH FINANCIAL  LLC
ITS AFFILIATES AND/OR ASSIGNS
PO BOX 979282
MIAMI                    FL 33197-9282

FGDCP2-011609

Certified Document Number: 88177672 - Page 2 of 64

GeoVera/Nguyen090002

IN WITNESS WHEREOF, the Company has caused the facsimile signatures of its President and Secretary to be affixed hereto, and has caused this policy to be signed on the Declarations Page by an authorized representative of the Company.

**GeoVera Specialty Insurance Company**

Kevin Nish
President

Karen Padovese
Secretary

Certified Document Number: 88177672 - Page 3 of 64

GeoVera/Nguyen000093



THIS PAGE INTENTIONALLY LEFT BLANK

Certified Document Number: 88177672 - Page 4 of 64

HOMEOWNERS
HO P 004 05 11

# LIMITED HOME DAY CARE COVERAGE
# ADVISORY NOTICE TO POLICYHOLDERS

**CAUTION:** This is a summary of the limited coverage provided in your Homeowners Policy for Home Day Care services. No coverage is provided by this summary nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverage you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF YOUR POLICY SHALL PREVAIL. PLEASE READ YOUR POLICY CAREFULLY.**

A. "Business", as defined in the policy, means:

  1. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

  2. Any other activity engaged in for money or other compensation, except the following:

    a. One or more activities:

      (1) Not described in **b.** through **d.** below; and

      (2) For which no insured receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    b. Volunteer activities for which no money is received, other than payment for expenses incurred to perform the activity;

    c. Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    d. The rendering of home day care services to a relative of an insured.

B. If you or any other insured regularly provides home day care services to a person or persons other than you or any other insureds as their trade, profession or occupation, that service is a "business".

C. If home day care service is not your or any other insured's given trade, profession or occupation but is an activity:

  1. That you or any other insured engages in for money or other compensation; and

  2. From which you or any other insured receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

  the home day care service and other activity will be considered a "business".

D. With respect to C. above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  1. Described in **A.2.** above; and

  2. Engaged in for money by you or any other insured;

  may be considered a "business" if the $2,000 threshold is exceeded.

E. With respect to A. through D. above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  1. Does not provide:

    a. Section II coverages. This is because your "business" or the "business" of any other insured is excluded under Section II – Exclusions;

    b. Coverage, under Section I, for other structures from which any "business" is conducted; and

Certified Document Number: 88177672 - Page 5 of 64



**2.** Limits Section **I** coverage, under Coverage **C** – Special Limits Of Liability, for "business" property:

   **a.** On the residence premises for the home day care "business" to $2,500. This is because Coverage **C** – Special Limits Of Liability imposes that limit on "business" property on the residence premises;

   **b.** Away from the residence premises for the home day care "business" to $1,500. This is because Coverage **C** – Special Limits Of Liability imposes that limit on "business" property away from the residence premises. This limit does not apply to antennas, tapes, wires, records, disks or other media that are:

     **(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

     **(2)** In or upon a motor vehicle.

Certified Document Number: 88177672 - Page 6 of 64

© Insurance Services Office, Inc., 2010

HO P 004 05 11

GeoVera/Nguyen090006

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in **7.** below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

   b. A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

© Insurance Services Office, Inc., 2010

Certified Document Number: 88177672 - Page 7 of 64



(2) 21 and in your care or the care of a resident of your household who is your relative; or

c. Under Section II:

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

(a) Persons while engaged in your employ or that of any person described in **5.a.** or **b.**; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in **a.** and **b.** above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one-family dwelling where you reside;

b. The two-, three- or four-family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

Certified Document Number: 88177672 - Page 8 of 64

Certified Document Number: 88177672 - Page 9 of 64

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### C. Coverage C – Personal Property

1. Covered Property

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. Limit For Property At Other Locations

   a. Other Residences

      Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

      (1) Moved from the "residence premises" because it is:

          (a) Being repaired, renovated or rebuilt; and

          (b) Not fit to live in or store property in; or

      (2) In a newly acquired principal residence for 30 days from the time you begin to move the property there.

   b. Self-storage Facilities

      Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

      (1) Moved from the "residence premises" because it is:

          (a) Being repaired, renovated or rebuilt; and

          (b) Not fit to live in or store property in; or

      (2) Usually located in an "insured's" residence, other than the "residence premises".

---



### 3. Special Limits Of Liability

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

(1) Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

(2) In or upon a "motor vehicle".

j. $1,500 on portable electronic equipment that:

(1) Reproduces, receives or transmits audio, visual or data signals;

(2) Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

(3) Is in or upon a "motor vehicle".

k. $250 for antennas, tapes, wires, records, disks or other media that are:

(1) Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

(2) In or upon a "motor vehicle".

### 4. Property Not Covered

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

This includes a "motor vehicle's" equipment and parts. However, this Paragraph 4.c. does not apply to:

(1) Portable electronic equipment that:

(a) Reproduces, receives or transmits audio, visual or data signals; and

(b) Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

(2) "Motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service a residence; or

(b) Designed to assist the handicapped;

d. Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

© Insurance Services Office, Inc., 2010

HO 00 03 05 11

Certified Document Number: 88177672 - Page 10 of 64

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's trees felled by a Peril Insured Against under Coverage **C**;

provided the trees:

(3) Damage a covered structure; or

(4) Do not damage a covered structure, but:

(a) Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

Certified Document Number: 88177672 - Page 11 of 64



**(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

   **(1)** Increase the limit of liability that applies to the covered property; or

   **(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section I – Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

   **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

   All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

© Insurance Services Office, Inc., 2010

HO 00 03 05 11

Certified Document Number: 88177672 - Page 12 of 64

GeoVera/Nguyen000012

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

  **(1)** Use of a credit card, electronic fund transfer card or access device:

   **(a)** By a resident of your household;

   **(b)** By a person who has been entrusted with either type of card or access device; or

   **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

  **(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

  **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

  **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

  **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

  **(1)** Earthquake; or

  **(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **Q.** Policy Period under Section I – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

**b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage – Collapse does not apply to:

  **(1)** A building or any part of a building that is in danger of falling down or caving in;

  **(2)** A part of a building that is standing, even if it has separated from another part of the building; or

  **(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

  **(1)** The Perils Insured Against named under Coverage **C**;

  **(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

  **(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

  **(4)** Weight of contents, equipment, animals or people;

  **(5)** Weight of rain which collects on a roof; or

Certified Document Number: 88177672 - Page 13 of 64



(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

e. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

f. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

11. **Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Certified Document Number: 88177672 - Page 14 of 64

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage C.

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

**A. Coverage A – Dwelling And Coverage B – Other Structures**

1. We insure against direct physical loss to property described in Coverages A and B.

2. We do not insure, however, for loss:

   a. Excluded under Section I – Exclusions;

   b. Involving collapse, including any of the following conditions of property or any part of the property:

      (1) An abrupt falling down or caving in;

      (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

      (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above;

      except as provided in **E.8.** Collapse under Section I – Property Coverages; or

   c. Caused by:

      (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

         (a) Maintain heat in the building; or

         (b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   (a) Fence, pavement, patio or swimming pool;

   (b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

   (c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

   (d) Pier, wharf or dock;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

   (a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

   (b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

© Insurance Services Office, Inc., 2010

Certified Document Number: 88177672 - Page 15 of 64



For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

(6) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

(c) Smog, rust or other corrosion, or dry rot;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(g) Birds, rodents or insects;

(h) Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

(i) Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

Certified Document Number: 88177672 - Page 16 of 64

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

b. This peril does not include loss caused by theft:

(1) Committed by an "insured";

(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

(4) That occurs off the "residence premises" of:

(a) Trailers, semitrailers and campers;

(b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

(c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge Or Overflow Of Water Or Steam**

a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

b. This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

(4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

d. Section I – Exclusion A.3. Water, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

© Insurance Services Office, Inc., 2010

GeoVera/Nguyen000017

Certified Document Number: 88177672 – Page 17 of 64



### 14. Freezing

a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

### 15. Sudden And Accidental Damage From Artificially Generated Electrical Current

This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

### 16. Volcanic Eruption

This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

### 1. Ordinance Or Law

Ordinance Or Law means any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion A.1.a. does not apply to the amount of coverage that may be provided for in E.11. Ordinance Or Law under Section I – Property Coverages;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion A.1. applies whether or not the property has been physically damaged.

### 2. Earth Movement

Earth Movement means:

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting.

This Exclusion A.2. applies regardless of whether any of the above, in A.2.a. through A.2.d., is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in A.2.a. through A.2.d., is covered.

### 3. Water

This means:

a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

b. Water which:

(1) Backs up through sewers or drains; or

(2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;

c. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

d. Waterborne material carried or otherwise moved by any of the water referred to in A.3.a. through A.3.c. of this exclusion.

© Insurance Services Office, Inc., 2010

HO 00 03 05 11

Certified Document Number: 88177672 - Page 18 of 64

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.**, is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.**, is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **N.** Nuclear Hazard Clause under Section I – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I – CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

Certified Document Number: 88177672 - Page 19 of 64



## C. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   **a.** Make reasonable and necessary repairs to protect the property; and

   **b.** Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   **a.** Show the damaged property;

   **b.** Provide us with records and documents we request and permit us to make copies; and

   **c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   **a.** The time and cause of loss;

   **b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

   **c.** Other insurance which may cover the loss;

   **d.** Changes in title or occupancy of the property during the term of the policy;

   **e.** Specifications of damaged buildings and detailed repair estimates;

   **f.** The inventory of damaged personal property described in **6.** above;

   **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   **h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

## D. Loss Settlement

In this Condition **D.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   **a.** Personal property;

   **b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   **c.** Structures that are not buildings; and

   **d.** Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   **a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

      **(1)** The limit of liability under this policy that applies to the building;

      **(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      **(3)** The necessary amount actually spent to repair or replace the damaged building.

   If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

Certified Document Number: 88172672 - Page 20 of 64

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D. Loss Settlement**, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**E. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

**G. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

© Insurance Services Office, Inc., 2010

Certified Document Number: 88177672 - Page 21 of 64



### H. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

### I. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

### J. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

### K. Abandonment Of Property

We need not accept any property abandoned by an "insured".

### L. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs F. Appraisal, H. Suit Against Us and J. Loss Payment under Section I – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

### M. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

### N. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

### O. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

### P. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

### Q. Policy Period

This policy applies only to loss which occurs during the policy period.

© Insurance Services Office, Inc., 2010   HO 00 03 05 11

Certified Document Number: 88177672 - Page 22 of 64

GelVeraNguyen000022

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**S. Loss Payable Clause**

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

**A. "Motor Vehicle Liability"**

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service a residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

Certified Document Number: 88177672 - Page 23 of 64



Certified Document Number: 88177672 - Page 24 of 64

(2) Owned by an "insured" provided the "occurrence" takes place:

(a) On an "insured location" as defined in Definition B.6.a., b., d., e. or h.; or

(b) Off an "insured location" and the "motor vehicle" is:

(i) Designed as a toy vehicle for use by children under seven years of age;

(ii) Powered by one or more batteries; and

(iii) Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

e. A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

(1) A golfing facility and is parked or stored there, or being used by an "insured" to:

(a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

1. Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

b. Rented to others;

c. Used to carry persons or cargo for a charge; or

d. Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

a. Is stored;

b. Is a sailing vessel, with or without auxiliary power, that is:

(1) Less than 26 feet in overall length; or

(2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

c. Is not a sailing vessel and is powered by:

(1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

(a) 50 horsepower or less and not owned by an "insured"; or

(b) More than 50 horsepower and not owned by or rented to an "insured"; or

(2) One or more outboard engines or motors with:

(a) 25 total horsepower or less;

(b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

(c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

(d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

(i) You declare them at policy inception; or

(ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in (c) and (d) above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages E and F do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

b. This Exclusion **E.2.** does not apply to:

(1) The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

Certified Document Number: 88177672 - Page 25 of 64



**F. Coverage E – Personal Liability**

Coverage E does not apply to:

1. Liability:

   a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D. Loss Assessment** under Section II – Additional Coverages;

   b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

      (1) That directly relate to the ownership, maintenance or use of an "insured location"; or

      (2) Where the liability of others is assumed by you prior to an "occurrence";

      unless excluded in **a.** above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

   a. Is also an insured under a nuclear energy liability policy issued by the:

      (1) Nuclear Energy Liability Insurance Association;

      (2) Mutual Atomic Energy Liability Underwriters;

      (3) Nuclear Insurance Association of Canada;

      or any of their successors; or

   b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

   This exclusion also applies to any claim made or suit brought against you or an "insured" to:

   a. Repay; or

   b. Share damages with;

   another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F – Medical Payments To Others**

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off the "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

Certified Document Number: 88177672 - Page 26 of 64

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      **(1)** A "business" engaged in by an "insured";

      **(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

      **(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

      This Exclusion e.(3) does not apply to a "motor vehicle" that:

      **(a)** Is designed for recreational use off public roads;

      **(b)** Is not owned by an "insured"; and

      **(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      **(1)** Is elected by the members of a corporation or association of property owners; and

      **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Certified Document Number: 88177672 - Page 27 of 64



Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F Limit Of Liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C. Damage To Property Of Others** under Section **II** – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

© Insurance Services Office, Inc., 2010

HO 00 03 05 11

Certified Document Number: 88177672 - Page 28 of 64

Certified Document Number: 88177672 - Page 29 of 64

## SECTIONS I AND II – CONDITIONS

### A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

### B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

### C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      (2) If the risk has changed substantially since the policy was issued.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.

   d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

### D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

### E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

### F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph C. Damage To Property Of Others under Section II – Additional Coverages.

### G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and



2. "Insured" includes:

   **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

© Insurance Services Office, Inc., 2010

**HO 00 03 05 11**

Certified Document Number: 88177672 - Page 30 of 64

GeoVera/Nguyen090030

POLICY NUMBER:

**HOMEOWNERS**
**HO 04 65 05 11**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COVERAGE C INCREASED SPECIAL LIMITS OF LIABILITY

**SCHEDULE**

**SECTION I – PROPERTY COVERAGES**
**COVERAGE C – PERSONAL PROPERTY**
**3.  Special Limits Of Liability**
The special limits of liability are increased as noted below:

| Property | Increase In Limit Of Liability | Total Limit Of Liability |
|---|---|---|
| a.  Money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards. | $ | $ |
| b.  Securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. | $ | $ |
| e.  Jewelry, watches, furs, precious and semiprecious stones for loss by theft, but not more than $1,000 for any one article. | $1, 000 | $2,500 |
| f.  Firearms and related equipment for loss by theft. | $ | $ |
| g.  Silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware for loss by theft. | $ | $ |
| j.  Portable electronic equipment that: <br> (1) Reproduces, receives or transmits audio, visual or data signals; <br> (2) Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and <br> (3) Is in or upon a "motor vehicle". | $ | $ |
| All other provisions of this policy apply. | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

HO 04 65 05 11              © Insurance Services Office, Inc., 2010              **Page 1 of 1**

Certified Document Number: 88177672 - Page 31 of 64

GenVera/Nguyen000031



THIS PAGE INTENTIONALLY LEFT BLANK

Certified Document Number: 88177672 - Page 32 of 64

POLICY NUMBER:

**HOMEOWNERS
HO 04 77 10 00**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ORDINANCE OR LAW
# INCREASED AMOUNT OF COVERAGE

### SCHEDULE*

**New Total Percentage Amount: 25%**

*Entry may be left blank if shown elsewhere in this policy for this coverage.

**SECTION I – PROPERTY COVERAGES**

**ADDITIONAL COVERAGES**

**11. Ordinance Or Law**

The total limit of liability that applies:

**a.** To Coverage **A,** or

**b.** For Form **HO 00 04,** to Building Additions And Alterations;

is increased from 10% to the percentage amount shown in the Schedule above.

This is Additional Coverage **10.** in Form **HO 00 06.**

All other provisions of this policy apply.

Certified Document Number: 88177672 - Page 33 of 64

GenVeraNguyen000033



THIS PAGE INTENTIONALLY LEFT BLANK

Certified Document Number: 88177672 - Page 34 of 64

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GEOVERA SPECIALTY INSURANCE COMPANY
## SPECIAL PROVISIONS – TEXAS

### SECTION I - CONDITIONS

**H. Suit Against Us** is replaced by the following:

**H. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy. Any action against us must be filed within two years and one day after the cause of action accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

However, if the laws of the state in which this policy was issued state that the foregoing suit limitations period is not enforceable, then any claim on this contract shall be void unless the "insured's" action is filed within the shortest limit of time permitted by the laws of that state.

US 01 42 (08-15)        GeoVera Specialty Insurance Company        Page 1 of 1

GeoVera/Nguyen090035



THIS PAGE INTENTIONALLY LEFT BLANK

Certified Document Number: 88177672 - Page 36 of 64

**THIS COVER NOTICE CONTAINS IMPORTANT INFORMATION.
PLEASE READ IT CAREFULLY.**

## SURPLUS LINES INSURANCE NOTICE

THIS INSURANCE CONTRACT IS WITH AN INSURER NOT
LICENSED TO TRANSACT INSURANCE IN THIS STATE AND IS
ISSUED AND DELIVERED AS SURPLUS LINES COVERAGE UNDER
THE TEXAS INSURANCE STATUTES. THE TEXAS DEPARTMENT
OF INSURANCE DOES NOT AUDIT THE FINANCES OR REVIEW
THE SOLVENCY OF THE SURPLUS LINES INSURER PROVIDING
THIS COVERAGE, AND THIS INSURER IS NOT A MEMBER OF THE
PROPERTY AND CASUALTY INSURANCE GUARANTY
ASSOCIATION CREATED UNDER CHAPTER 462, INSURANCE
CODE. CHAPTER 225, INSURANCE CODE, REQUIRES PAYMENT
OF 4.85 PERCENT TAX ON GROSS PREMIUM.

Certified Document Number: 88177672 - Page 37 of 64

US 01 43 (03-15)          GeoVera Specialty Insurance Company          Page 1 of 1

GeoVera/Nguyen000037



THIS PAGE INTENTIONALLY LEFT BLANK

Certified Document Number: 88177672 - Page 38 of 64

GEOVERA SPECIALTY INSURANCE COMPANY

**1. IMPORTANT NOTICE**

To obtain information or make a complaint:

**2.** You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

**3.** You may write to the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 490-1007
Web: http://www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**4. PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance (TDI).

**5. ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

**1. AVISO IMPORTANTE**

Para obtener información o para someter una queja:

**2.** Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de companias, coberturas, derechos o quejas al:

1-800-252-3439

**3.** Puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 490-1007
Web: http://www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**4. DISPUTAS SOBRE PRIMAS O RECLAMOS:**

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**5. ESTE ES UN AVISO DE SU POLIZA:**

Este aviso es solo para propósito de información y no se conviene en parte o condición del documento adjunto.

Certified Document Number: 88177672 - Page 39 of 64



THIS PAGE INTENTIONALLY LEFT BLANK

Certified Document Number: 88177672 - Page 40 of 64

GeoVera/Nguyen000040

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED SMOG, RUST, MOLD, ROT, OR BACTERIA COVERAGE
## AND LIMITED SEEPAGE OR LEAKAGE COVERAGE
### FORM HO 00 03 ONLY

## DEFINITIONS

The following words and phrases are defined and are added to Paragraph **B**:

20. "Bacteria" means any type or form of bacterium, or any mycotoxin, spore, scent, or byproduct produced or released by such bacterium.

21. "Mold or other fungi" means:

    a. Any type or form of mold or mildew;

    b. Any other type or form of fungus; or

    c. Any mycotoxin, spore, scent, or by-product produced or released by such mold, mildew, or other fungus.

22. "Per policy period seepage or leakage combined total sublimit" means the $1,000 limit of liability that applies to the combined total of all of the following which occur during any one policy period:

    a. With respect to Section **I**, covered loss caused by or resulting from water or steam that seeps or leaks, or the presence or condensation of humidity, moisture, or vapor that occurs, above the surface of the ground over a period of 14 days or more; and

    b. With respect to Section **II**, covered "bodily injury" or "property damage" arising out of water or steam that seeps or leaks, or the presence or condensation of humidity, moisture, or vapor that occurs, above the surface of the ground over a period of 14 days or more.

    This combined total $1,000 sublimit is the most we'll pay regardless of the number or type of coverages that may apply, the number of premises insured under this policy, the number of persons injured or

whose property is damaged, or the number of "occurrences" or claims made. This sublimit is included in, but does not increase, the maximum limits of liability under Sections I and II of your policy as shown on the Declarations page.

23. "Per policy period mold combined total sublimit" means the $5,000 limit of liability that applies to the combined total of all of the following which occur during any one policy period:

    a. With respect to Section **I**, covered loss caused by smog, rust or other corrosion, "mold or other fungi", wet or dry rot, or "bacteria" resulting from a Peril named under **Section I – Perils Insured Against**, paragraph **B. Coverage C – Personal Property**; and

    b. With respect to Section **II**, covered "bodily injury" or "property damage" arising out of smog, rust or other corrosion, "mold or other fungi", wet or dry rot, or "bacteria".

    This combined total $5,000 sublimit is the most we'll pay regardless of the number or type of coverages that may apply, the number of premises insured under this policy, the number of persons injured or whose property is damaged, the number of "occurrences" or claims made, or the number or type of smog, rust or other corrosion, "mold or other fungi", wet or dry rot, or "bacteria" that caused the loss, injury, or damage. This sublimit is included in, but does not increase, the maximum limits of liability under Sections I and II of your policy as shown on the Declarations page.

Certified Document Number: 88177672 - Page 41 of 64

GeoVera/Nguyen000041

## SECTION I – PROPERTY COVERAGES

### D.  Coverage D – Loss Of Use

The first paragraph of D. Coverage D – Loss Of Use is replaced by the following:

The limit of liability for Coverage D is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value, and 3. Civil Authority Prohibits Use below.

However, loss of use covered under these three coverages caused by:

    a.  Smog, rust or other corrosion, "mold or other fungi", wet or dry rot, or "bacteria" is subject to the "per policy period mold combined total sublimit"; and

    b.  Water or steam that seeps or leaks, or the presence or condensation of humidity, moisture, or vapor that occurs, above the surface of the ground over a period of 14 days or more is subject to the "per policy period seepage or leakage combined total sublimit".

### E.  Additional Coverages

The following is added to E. Additional Coverages:

### 14. Seepage Or Leakage

We insure for direct physical loss to property described in Coverages A, B, and C caused by:

    a.  Water or steam that seeps or leaks; or

    b.  The presence or condensation of humidity, moisture, or vapor that occurs:

above the surface of the ground over a period of 14 days or more. However, such coverage is subject to the "per policy period seepage or leakage combined total sublimit".

## SECTION I – PERILS INSURED AGAINST

Paragraphs 2.c.(5) and 2.c.(6)(c) of A. Coverage A – Dwelling And Coverage B – Other Structures are deleted.

## SECTION I – EXCLUSIONS

The following exclusions are added to Paragraph A.:

### 15. Seepage Or Leakage

    a.  Water or steam that seeps or leaks; or

    b.  The presence or condensation of humidity, moisture, or vapor that occurs;

above the surface of the ground over a period of 14 days or more.  This exclusion does not apply to the amount of coverage provided for **Seepage Or Leakage** in **E. Additional Coverages** under **Section I – Property Coverages.**

### 16. Smog, Rust Or Other Corrosion, "Mold Or Other Fungi", Wet Or Dry Rot, Or "Bacteria"

Smog, rust or other corrosion, "mold or other fungi", wet or dry rot, or "bacteria" means the presence, growth, proliferation, spread or any activity of smog, rust or other corrosion, "mold or other fungi", wet or dry rot, or "bacteria".

Loss caused by smog, rust or other corrosion, "mold or other fungi", wet or dry rot, or "bacteria" resulting from a Peril named under **Section I – Perils Insured Against**, paragraph **B. Coverage C – Personal Property** is covered. However, such loss is subject to the "per policy period mold combined total sublimit".

## SECTION II – CONDITIONS

The following is added to A. Limit Of Liability:

However, our liability under Coverages E and F for any covered "bodily injury" or "property damage" arising out of:

    a.  Smog, rust or other corrosion, "mold or other fungi", wet or dry rot, or "bacteria" is subject to the "per policy period mold combined total sublimit"; and

    b.  Water or steam that seeps or leaks, or the presence or condensation of humidity, moisture, or vapor that occurs.

Certified Document Number: 88177672 - Page 42 of 64

GeoVera/Nguyen000042

above the surface of the ground over a period of 14 days or more is subject to the "per policy period seepage or leakage combined total sublimit".

Paragraph **B. Severability Of Insurance** is replaced by the following:

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the "per policy period mold combined total sublimit" and the "per policy period seepage or leakage combined total sublimit". This condition will not increase our limit of liability for any one "occurrence".

All other provisions of this policy apply.

Certified Document Number: 88177672 - Page 43 of 64

GeoVera/Nguyen000043

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SUPPLEMENTAL LOSS ASSESSMENT COVERAGE

1. **Additional Insurance – Residence Premises**

   We will pay up to a total of $5,000 for all assessments covered under:

   a. Section **I** - Additional Coverage **E.7.** Loss Assessment; or

   b. Section **II** – Additional Coverage **D.** Loss Assessment; or

   c. Both **a.** and **b.** above;

   arising out of a single loss.

2. **Section II – Exclusions**

   Section **II** – Exclusion **F.1.a.** does not apply to this coverage.

All other provisions of this policy apply.

Certified Document Number: 88177672 - Page 44 of 64

GeoVera/Nguyen000044



THIS PAGE INTENTIONALLY LEFT BLANK

Certified Document Number: 88177672 - Page 45 of 64

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MASTER ENDORSEMENT
### FORM HO 00 03 ONLY

### DEFINITIONS

Paragraph **B.8.** is replaced by the following:

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage".

   Neither assault nor battery, committed by anyone, is an "occurrence", whether or not committed by or at the direction of an "insured".

Paragraph **B.11.** is replaced by the following:

11. "Residence premises" means:

   a. The one-family dwelling where you reside;

   b. The two-, three-, or four-family dwelling where you reside in at least one of the family units; or

   c. That part of any other building where you reside;

   on the inception date of the policy period shown in the Declarations and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also includes other structures and grounds at that location.

   "Residence premises" does not include mobile homes, modular homes, and/or prefabricated homes, whether or not they are permanently affixed to a foundation.

The following words and phrases are defined and are added to Paragraph **B**:

12. "Criminal act" means any act or omission which, if the individual were found guilty, would subject the individual to criminal liability, regardless of whether any such allegations or charges are actually brought.

13. "Hard floor covering" means the protective and/or decorative material permanently attached to a sub floor or slab floor, including but not limited to tile, glass, granite, porcelain, marble, mosaic, terracotta, stone, metal, or any combination thereof.

14. "Roof" means the external upper covering of a structure and all materials permanently attached including but not limited to "roofing overlayment", batten boards, decking, felt, flashing, skylights, vents, or any combination thereof.

15. "Roofing overlayment" means material permanently applied as a protective layer of a roof covering, including but not limited to slate, shakes, shingles, tiles, metal, fiberboard, concrete, rolled roofing, or any combination thereof.

16. "Room" means an area within a dwelling or other structures enclosed or set apart by partitions, walls, doorways, archways, or any combination thereof, whether or not the doorways or archways have a functional door that can be closed.

17. "Swimming pool enclosure(s) and/or patio enclosure(s)" mean structures that fully or partially cover or enclose a swimming pool and/or patio. The enclosure(s) may be constructed of wood, fiberglass, aluminum, glass, vinyl, canvas, fiber or wire mesh screen, or any other material or combination of materials, whether or not engineered or custom designed or attached to or set apart from any building or structure.

18. "Unoccupied" means the dwelling is not being inhabited as a residence.

19. "Vacant" means the dwelling lacks the necessary amenities, adequate furnishings, or utilities and services to permit occupancy of the dwelling as a residence.

Certified Document Number: 88177672 - Page 46 of 64

GeoVera/Nguyen000049

# SECTION I – PROPERTY COVERAGES

## A. Coverage A – Dwelling

Paragraph 2. is replaced by the following:

2. We do not cover:

   a. Land, including land on which the dwelling is located; or

   b. "Swimming pool enclosure(s) and/or patio enclosure(s)". This exclusion does not apply to an enclosure that is fully covered by the "roof" of the main dwelling covered under this policy.

   c. Swimming pools or other structures set apart from the dwelling by a clear space except as provided in **Coverage B – Other Structures.**

## B. Coverage B – Other Structures is replaced by the following:

## B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by a clear space. This includes swimming pools or structures connected to the dwelling by only a walkway, fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures used in whole or in part for "business"; or

   d. "Swimming pool enclosure(s) and/or patio enclosure(s)". This exclusion does not apply to an enclosure that is fully covered by the "roof" of the main dwelling covered under this policy.

The limit of liability for this coverage will not be more than the limit shown in the Declarations for Coverage B. Use of this coverage does not reduce the Coverage A Limit of Liability.

## C. Coverage C – Personal Property

3. Special Limits Of Liability

The following are added to Paragraph 3.:

   l. Art/Collectibles: including but not limited to paintings, prints, photographs, and framed works, statuary, mobiles, and anything collected in anticipation of an increase in value.

   10% of Coverage C Personal Property limit per loss for all items in this category.

   m. Bicycles and Bicycle Accessories

   $1,000 per loss limit for the peril of theft.

   n. Tools and Accessories

   $5,000 per loss limit.

4. Property Not Covered

Paragraph f. is replaced by the following:

   f. Property of roomers, boarders, tenants, and anyone who regularly resides at the insured premises who is not an "insured".

The following is added:

   l. Your satellite dish, satellite antenna, or radio towers and their antenna. This exclusion also applies to all related receiving equipment including receiver mounts, transducers, or other receiver parts or installation parts. Television sets are not an excluded item under this exclusion.

   m. Mobile homes, modular homes, and/or prefabricated homes, or their contents, whether or not permanently affixed to a foundation.

Certified Document Number: 88177672 - Page 47 of 64

GeoVera/Nguyen090047

E. **Additional Coverages**

2. **Reasonable Repairs** is replaced by the following:

2. **Reasonable Repairs**

We will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss and related damages is covered. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against. This does not relieve you of your duties, in case of a loss to covered property, as set forth in Section 1 – Conditions C.4. This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass Or Safety Glazing Material,** Paragraph **b.(2)** is replaced by the following:

b. This coverage does not include loss:

(2) On the "residence premises" if the dwelling has been "vacant" or "unoccupied" for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in **a.(2)** above. A dwelling being constructed is not considered "vacant" or "unoccupied".

The following is added:

13. **"Swimming Pool Enclosure(s) And/Or Patio Enclosure(s)"**

a. We will pay for direct physical loss to a "swimming pool enclosure(s) and/or patio enclosure(s)" resulting from any Peril Insured Against. However, such coverage is subject to a combined total limit of $5,000.

b. The combined total limit stated above is the most that we will pay in any one policy period without regard to the number of losses, "occurrences",

or claims made and without regard to the number of "swimming pool enclosure(s) and/or patio enclosure(s)" that may be covered under this policy.

c. This coverage is included in the limit of liability that applies to the covered property, and therefore does not increase the limit of liability under this policy.

**SECTION 1 – PERILS INSURED AGAINST**

A. **Coverage A – Dwelling And Coverage B – Other Structures**

Paragraph **2.c.(4)** is replaced by the following:

(4) Vandalism and malicious mischief, if the dwelling has been "vacant" or "unoccupied" for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered "vacant" or "unoccupied".

Paragraph **2.c.(6)(g)** is replaced by the following:

(g) Birds, rodents, insects, vermin, marsupials, animals, reptiles, fish, or pests, including but not limited to, termites, snails, raccoons, opossums, skunks, bats, armadillos, flies, bed bugs, lice, ticks, locusts, cockroaches, and fleas;

Paragraph **2.c.(7)** is added as follows:

(7) Falling objects unless the "roof" or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not covered.

Certified Document Number: 88177672 - Page 48 of 64

## SECTION I - EXCLUSIONS

**2. Earth Movement** is replaced by the following:

Earth Movement means:

**a.** Earthquake, including land shock waves or tremors before, during, or after a volcanic eruption;

**b.** Landslide, mudslide, or mudflow;

**c.** Subsidence or sinkhole;

**d.** Earth sinking, rising, or shifting;

**e.** Clay shrinkage or other expansion or contraction of soils or organic materials;

**f.** Settling, cracking, or expansion of foundations;

**g.** Scouring; or

**h.** Any other earth movement including earth sinking, rising, or shifting.

This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.h.**, is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.h.**, is covered.

The following exclusions are added to Paragraph **A**:

### 10. Asbestos Or Lead

Asbestos or lead means the presence or effects of any form of asbestos or lead.

### 11. Biochemical Release From Terrorism

Biochemical release from terrorism means the direct or indirect release of germs, disease, or other contagions, contaminants, pathogens, or poisons by any individual or group that releases such items by committing, or threatening to commit, an act of force, violence, or danger against any person(s), organization(s), or property that:

**a.** Intimidates or coerces, or appears to a reasonable person was intended to in-

timidate or coerce, any government authority, any civilian population, or any segment of any civilian population;

**b.** Disrupts, or appears to a reasonable person was intended to disrupt, any segment of the economy; or

**c.** Involves, or appears to a reasonable person was intended to involve, release of any such substances.

### 12. "Criminal Acts" Or Illegal Activity

"Criminal acts" or illegal activity means any and all criminal or illegal acts performed by any "insured" that result in damage to your structure or personal property.

### 13. Existing Damage

Existing damage means:

**a.** Damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or

**b.** Claims or damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to policy inception.

This Exclusion **A.13.** does not apply in the event of a total loss caused by a Peril Insured Against.

### 14. Diminished Value

We do not cover any loss due to diminished value of any property covered under this policy.

## SECTION I – CONDITIONS

### C. Duties After Loss

Paragraph **6.** is replaced by the following:

**6.** Prepare an inventory of damaged personal property showing the quantity, description, age, actual cash value, and amount of loss. Attach bills, receipts, and related documents that establish ownership of the

Certified Document Number: 88177672 - Page 49 of 64

damaged personal property and justify the figures in the inventory.

Paragraph 7. is replaced by the following:

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies;

   c. You or any "insured" under this policy must:

      (1) Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

      (2) Sign the same;

   d. If you are an association, corporation, or other entity; any members, officers, directors, partners, or similar representatives of the association, corporation, or other entity must:

      (1) Submit to examinations under oath and recorded statements, while not in the presence of any other members, officers, directors, partners, or similar representatives of the association, corporation, or other entity or an "insured"; and

      (2) Sign the same;

   e. Your agents, your representatives, including any public adjusters engaged on your behalf, and anyone insured under this policy other than an "insured" in c. or d. above, must:

      (1) Submit to examinations under oath and recorded statements, while not in the presence of any other agent, representative, including any other public adjusters, or an "insured"; and

      (2) Sign the same.

The following paragraph is added:

9. At our request, provide to us or execute an authorization which allows us to obtain on your behalf, records and documentation we deem relevant to the investigation of your loss.

**D. Loss Settlement**

Paragraph **2.d.** is replaced by the following:

   d. We will pay no more than the actual cash value until the repairs are started or completed. We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We will pay any remaining amount necessary to perform such repairs as work is performed and expenses are incurred and you provide us with verifiable copies of paid receipts for work that is completed. We will not require you to advance payment for such repairs or expenses, with the exception of incidental expenses to mitigate further damages.

   However, if the cost to repair or replace the damage is both:

      (1) Less than 5% of the amount of insurance in this policy on the building; and

      (2) Less than $2,500;

   We will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

Paragraph **2.e.** is replaced by the following:

   e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building, and the repair or replacement of the damaged building is completed within 365 days after the date of loss, unless you request in writing that this time be extended for an additional 180 days.

Certified Document Number: 88177672 - Page 50 of 64

GeoVera/Nguyen000050

The following items are added to **D. Loss Settlement, Paragraph 2:**

f. The limit of liability that applies to the removal, repair, or replacement of all or part of a "roof" is limited to $10,000 if any part of the "roof" is composed of more than one layer of "roofing overlayment".

g. Payment for covered losses involving damage to "hard floor covering" will be limited to the "room(s)" where the direct physical loss or damage occurred without regard to matching or uniformity whether or not the "hard floor covering" is continuous throughout other "room(s)".

h. If the dwelling where loss or damage occurs has been "vacant" for more than 30 consecutive days before the loss or damage, we will:

   (1) Not pay for any loss or damage caused by any of the following perils, even if they are covered causes of loss:

      (a) Vandalism;

      (b) Sprinkler leakage, when caused by or arising out of the freezing of a fire protective sprinkler system, unless you have protected the entire system against freezing;

      (c) Dwelling glass breakage;

      (d) Water damage;

      (e) Theft;

      (f) Attempted theft; or

      (g) Malicious mischief.

   Dwellings under construction are not considered "vacant".

   (2) Reduce the amount we would otherwise pay for a covered loss by 15%.

i. When damage from hail consists only of dents to the exterior surface of a building or other structures, not caus-

ing structural damage, we will pay the lowest of the following amounts:

   (1) The cost of repairing or replacing the damaged portion of the property.

   (2) 2% of the limit of liability provided under Coverage A – Dwelling.

j. The amount of coverage that may be provided for in **E. Additional Coverages 11. Ordinance Or Law** or by endorsement attached to the policy is only payable as incurred and only if the covered building is repaired or replaced with a building of like kind, quality, and use on the "residence premises".

**F. Appraisal** is replaced by the following:

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written demand from the other and notify the other of the appraiser's name and contact information. If the appraisers cannot agree on the amount of loss or the actual cash value in accord with this Condition, the two appraisers will choose a competent and impartial umpire. If the appraisers cannot agree upon an umpire within 15 days, you and we shall jointly ask a judge of a court of record in the judicial district where the "residence premises" is located to choose an umpire. Neither you nor we may assign the right to demand appraisal to anyone.

The appraisers will separately set the amount of loss and provide a written appraisal report specifically describing:

   a. Each item of property being appraised;

   b. The types or kinds of damage to each item of property;

   c. The extent of the damage to each item of property;

Certified Document Number: 88177672 - Page 51 of 64

GeoVera/Nguyen000051

Certified Document Number: 88177672 - Page 52 of 64

d. The estimated costs of repair or re-placement of each item of property;

e. The estimated amount of depreciation and/or obsolescence of each item of property; and

f. The actual cash value of each item of property.

If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If the appraisers cannot agree, they will each submit their differences to the umpire, specifically describing the dif-ferences and the amount attributable to each difference. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser;

2. Pay the costs of experts or any other ex-penses not mutually agreed in advance to share; and

3. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

a. You and we agree that any suit for or involving a disagreement in the amount of loss claimed under this policy shall be abated on the demand for appraisal by either you or us until after an appraisal award is issued in accord with this Condition; and

b. We retain the right to apply the policy coverages, terms and conditions un-der this policy to any appraisal award.

L. **Mortgage Clause** is replaced by the follow-ing:

L. **Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortga-gee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. The mortgagee's right to receive payment under any claim is subject to, and condi-tioned upon, the mortgagor's right to re-cover under the policy. If we rescind or void the policy for any reason as to you, the policy is rescinded and voided as to the mortgagee as well. The mortgagee has no separate right to recover under this policy if the policy is void or rescinded for any reason.

3. If we deny your claim and the policy is not voided or rescinded by us, that denial will not apply to a valid claim of the mortgagee that is covered under the poli-cy, if the mortgagee:

a. Notifies us of any change in owner-ship, occupancy, or substantial change in risk of which the mortgagee is aware;

b. Pays any premium due under this pol-icy on demand if you have neglected to pay the premium; and

c. Submits a signed, sworn statement of loss within 60 days after receiving no-tice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment un-der Section **I** - Conditions also apply to the mortgagee.

4. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

5. If we pay the mortgagee for any loss and deny payment to you:

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full as-signment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

GeoVera/Nguyen000052

6. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**N. Nuclear Hazard Clause**

Paragraph **3.** is replaced by the following:

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard. Direct loss by fire resulting from the nuclear hazard is covered to the extent required by law.

**R. Concealment Or Fraud** is deleted.

The following Conditions are added:

**T. Inflation Guard**

1. At the time of the renewal or any policy change, we will re-evaluate the cost index we use to determine the current replacement cost of the dwelling and structures covered under Coverage **A.** This may result in an increase in the amount of premium you are charged and an increase in the limits of liability for Coverages **A, B, C,** and **D.**

2. Any adjustment in premium resulting from the application of the adjusted cost index will be made based on the premium rates used by us at the time of the change.

**U. Assignment Of Benefits**

1. For any assignment of benefits after a loss, you must:

   a. Disclose the assignment to us as soon as practicable and prior to the payment of any claim; and

   b. Provide us with copies of documents including, but not limited to, the assignment contract, any disclosures, damage estimates, repair invoices, or any other documents associated with the assignment; and

   c. Comply with all of the Section **I** – Conditions, **C.** Duties After Loss. We have no duty to provide coverage under this policy if you fail to comply with these duties.

2. No assignment of claims benefits, regardless of whether made before loss or after loss, shall be valid without the written consent of all "insureds", all additional "insureds", and all mortgagee(s) named in this policy.

3. If we deny your claim pre-assignment, that denial will be applied to a valid claim of any assignee(s) and/or any other third parties contracted by you for services rendered to you to repair or replace damaged property. Post assignment, that denial will be applied to a valid claim for any assignee(s) and/or any other third parties contracted by you, ten (10) days after we have provided them with written notice and a copy of the denial.

4. We will not be responsible for payment to any assignee or third parties for payments for services rendered arising out of property losses that are not covered under this policy.

**SECTION II – EXCLUSIONS**

**E. Coverage E. – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph **8. Controlled Substances** is replaced by the following:

**8. Controlled Substances**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer, or possession by any person of a Controlled Substance as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional provided it does not conflict with Federal law.

The following exclusions are added:

Certified Document Number: 88177672 - Page 53 of 64

9. **Animals Owned Or Kept By An "Insured"**

"Bodily injury" or "property damage" arising out of or in any way related to the actions of any animal owned or kept by an "insured".

For purposes of this exclusion, animal owned or kept by an "insured" means any animal owned by an "insured" or in their care, custody, or control other than domestic animals not commonly considered livestock, such as dogs and cats kept as pets and not otherwise excluded under this policy.

10. **Asbestos Or Lead**

Asbestos or lead means the presence or effects of any form of asbestos or lead and includes any of the following:

a. "Bodily injury" arising out of the absorption, ingestion, or inhalation of, or prolonged exposure to asbestos or lead;

b. "Property damage" arising out of asbestos or lead; or

c. Any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any "insured" test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of asbestos or lead.

Because asbestos and lead are pollutants, this exclusion applies in addition to the Pollution Exclusion and any other pollution-related exclusion made a part of this policy.

11. **Assault Or Battery**

"Bodily injury" or "property damage" arising out of assault or battery, whether or not committed by or at the direction of an "insured".

12. **Biochemical Release From Terrorism**

"Bodily injury" or "property damage" arising out of or in connection with the di-

rect or indirect release of germs, disease, or other contagions, contaminants, pathogens, or poisons by any individual or group that releases such items by committing, or threatening to commit, an act of force, violence, or danger against any person(s), organization(s), or property that:

a. Intimidates or coerces, or appears to a reasonable person was intended to intimidate or coerce, any government authority, any civilian population, or any segment of any civilian population;

b. Disrupts, or appears to a reasonable person was intended to disrupt, any segment of the economy; or

c. Involves, or appears to a reasonable person was intended to involve, release of any such substances.

13. **Bodies Of Water**

"Bodily injury" or "property damage" arising out of any "insured's" ownership or control of any natural or man-made body of water, including but not limited to:

a. Ponds;

b. Lakes;

c. Streams;

d. Pools;

e. Swamps; and

f. Creeks.

This exclusion does not apply to swimming pools which are not otherwise excluded under this policy.

14. **"Criminal Acts"**

"Bodily injury" or "property damage" arising out of any "criminal act". A "criminal act" includes, but is not limited to, any of the following:

a. Assault or battery committed by any person;

b. The failure to suppress or prevent assault or battery by any person;

Certified Document Number: 88177672 - Page 54 of 64

c. The failure to provide an environment safe from assault or battery or failure to warn of the dangers of the environment which could contribute to assault or battery;

d. The use of any force to protect persons or property whether or not the "bodily injury" or "property damage" was intended from the standpoint of an "insured" or committed by or at the direction of an "insured"; or

e. Any other "criminal act".

## 15. Mobile Homes, Modular Homes, And/Or Prefabricated Homes

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use, or control of any mobile home, modular home, and/or prefabricated home. This exclusion applies whether or not the mobile home, modular home, and/or prefabricated home is permanently affixed to a foundation.

## 16. Pollution

a. "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at, on, in, or from any "insured location"; or

b. Any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any "insured" test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" caused by heat, smoke, or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it is intended to be.

## 17. Punitive Or Exemplary Damages

Punitive or exemplary damages, or any costs or interest attributable to such damages.

## 18. Trampolines

"Bodily injury" or "property damage" arising out of or in any way related to the ownership, maintenance, or use of any trampoline owned or borrowed by, rented or leased to, or in the care, custody, or control of any "insured".

## 19. Unfenced Pools And/Or Pools With Diving Boards, Diving Structures, Or Slides

a. "Bodily injury" arising out of any "insured's" ownership or control of a swimming pool which is not enclosed, fenced, or otherwise safeguarded as required by any applicable ordinance or law.

b. "Bodily injury" arising out of any "insured's" ownership or control of a swimming pool which has a diving board, diving structure, or slide.

## 20. Vicious Dogs

"Bodily injury" or "property damage" arising out of the actions of any canine that is a:

a. Vicious canine;

b. Staffordshire Bull Terrier;

c. American Pit Bull Terrier;

d. Rottweiler;

e. Doberman Pinscher;

f. Chow Chow; or

g. American Staffordshire Terrier.

For purposes of this exclusion:

   (1) Vicious canine means a canine, regardless of the breed, that any

Certified Document Number: 88177672 - Page 55 of 64

GeoVera/Nguyen000055

"insured" knows or should have known has attacked, bitten, or otherwise caused "bodily injury" to any person.

(2) A canine is deemed to be a Staffordshire Bull Terrier, American Pit Bull Terrier, Rottweiler, Doberman Pinscher, Chow Chow, or American Staffordshire Terrier if its lineage contains part of that breed.

## SECTION II – CONDITIONS

**A.  Limit Of Liability** is replaced by the following:

### A.  Limit Of Liability

1. Our total liability under Coverage **E** for all damages arising out of any one "occurrence" will not be more than the Coverage **E** Limit of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made, or persons injured. All "bodily injury" and "property damage" arising out of any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

2. Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one "occurrence" will not be more than the Coverage **F** Limit of Liability shown in the Declarations.

3. The maximum amount we will pay per "occurrence" for "bodily injury" and "property damage" for a claimant that is a parent, sibling, or child of an "insured" who would otherwise not be excluded from coverage, is $25,000.

4. The maximum amount we will pay per "occurrence" for "bodily injury" and "property damage" arising out of the use, ownership, or maintenance of any firearm, BB gun, pellet gun, or air gun is $25,000.

5. The maximum amount we will pay per "occurrence" for "bodily injury" and "property damage" arising out of or in any way related to any animal whether or not owned by an "insured" is $25,000.

The following is added to C. Duties After "Occurrence" Paragraph 1.:

d. Submit to examination under oath, while not in the presence of another "insured", and sign the same.

The following Condition is added to **D. Duties Of An Injured Person - Coverage F – Medical Payment To Others**, Paragraph 1.:

c. Submit to a recorded statement.

**J. Concealment Or Fraud** is deleted.

The following Condition is added:

### K.  Joint Obligations

The terms of this policy impose joint obligations on persons defined as an "insured". This means that the responsibilities, acts, and failures to act of a person defined as an "insured" will be binding upon another person defined as an "insured".

## SECTIONS I AND II – CONDITIONS

The following Conditions are added:

### H.  Automatic Termination

If we offer to renew and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

### I.  Concealment Or Fraud

The entire policy will be voidable if, regardless of whether related to a loss, any "insured", their agent, or their broker:

1. Conceals or misrepresents any material fact or circumstance;

2. Engages in fraudulent conduct; or

3. Makes false statements;

relating to this insurance.

Certified Document Number: 88177672 - Page 56 of 64

GeoVera/Nguyen000056

We consider all information provided, or that should have been provided, and all questions asked on the on-line application for this policy to be material.

### J. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports, or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.

   We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes, or standards.

3. This condition applies not only to us, but also to any rating, advisory, inspection service, or similar organization which makes insurance inspections, surveys, reports, or recommendations.

### K. Salvage

We may permit you to keep damaged insured property after a loss. If we permit you to keep damaged insured property, we will reduce the amount of loss proceeds payable to you under the policy by the value of the salvage.

### L. Service Of Suit

If we fail to pay any amount claimed to be due under this policy and you sue us, we will, at your request, submit to the jurisdiction of a court of competent jurisdiction within the United States. Service of process in such suit may be made on us at the following address: Corporation Service Company, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833. Service of process in such suit may also be made on the Superintendent, Commissioner, or Director of Insurance for the state in which the suit is being filed, if the law so provides. We designate that appropriate officer, or that officer's successor, to mail a copy of the papers to us.

Nothing in this condition constitutes a waiver of our right to bring an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by law.

All other provisions of this policy apply.

Certified Document Number: 88177672 - Page 57 of 64

GeoVera/Nguyen000057

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY REPLACEMENT COST
# LOSS SETTLEMENT

**A. Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage C; and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas, and outdoor equipment; and

      (2) Carpeting and household appliances;

   whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware, and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (3) Smoking implements; or

      (4) Jewelry; and

   f. Golfer's equipment meaning golf clubs, golf clothing, and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings, and similar articles of rarity or antiquity, which cannot be replaced.

2. Memorabilia, souvenirs, collectors items, and similar articles, whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage **C**, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in **A.2.a. – f.** above, the limit of liability that applies to the item.

Certified Document Number: 88177672 - Page 58 of 64



2. If the cost to repair or replace the property described in A. above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us, within 180 days after the date of the loss, of your intent to repair or replace the damaged property, and the repair or replacement of the damaged property is completed within 365 days after the date of loss, unless you request in writing that this time be extended for an additional 180 days.

All other provisions of this policy apply.

Certified Document Number: 88177672 - Page 59 of 64

GeoVera/Nguyen000059

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COMPANY UNDERWRITING FEE DISCLOSURE

The Company Underwriting Fee applicable to
this policy is fully earned and non-refundable at
policy inception.   If this policy is cancelled
during its term, the Company will retain the
entire Company Underwriting Fee.

All other provisions of this policy apply.

Certified Document Number: 88177672 - Page 60 of 64

GeoVera/Nguyen090060

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY FEE DISCLOSURE

The Policy Fee applicable to this policy is fully earned and non-refundable at policy inception. If this policy is cancelled during its term, the surplus lines wholesaler will retain the entire policy fee.

All other provisions of this policy apply.

Certified Document Number: 88177672 - Page 61 of 64

GeoVera/Nguyen000061



THIS PAGE INTENTIONALLY LEFT BLANK

Certified Document Number: 88177672 - Page 62 of 64

# GEOVERA SPECIALTY INSURANCE COMPANY'S PRIVACY POLICY

Thank you for selecting GeoVera Specialty Insurance Company as your insurance company. At GeoVera Specialty Insurance Company, we recognize that privacy is important to you. That is why we are committed to protecting your privacy through the adoption of the following privacy principles:

## COLLECTION OF INFORMATION

We collect, retain and use information about you, including members of your household, only where we believe that it will help or is necessary to provide you products and services or otherwise conduct our business. We collect nonpublic personal financial information about you from the following sources:

- Information we receive from you or through your agent or broker on applications or other forms;
- Information we receive from or about you in the process of adjusting claims;
- Information about your coverages and loss activity with other carriers; and
- Information we receive from a consumer reporting agency.

Such information includes identifying information such as your name, address, and social security number; financial information such as your income, payment history or credit history; and, under certain circumstances, health information such as information about an illness, disability or injury. It could also include information on claims with other insurance companies and us and the condition and maintenance of your property.

Any information obtained from a report prepared by an insurance-support organization may be retained by the insurance support organization and disclosed to other persons.

## DISCLOSURE OF INFORMATION

We usually do not disclose nonpublic personal information about you without your consent. However, in some circumstances we may disclose the following personal information about you without your prior authorization:

- Information from your application or other forms, such as your name, address and social security number;
- Information about your transactions with us, our affiliates or others, such as your policy coverage, premiums and payment history; and
- Information about your claim history.

We do not disclose any personal information about you to anyone unless allowed by law. We may disclose personal information about you to:

- State insurance departments, for their regulation of our business;
- Other government authorities;
- Our agents and brokers as necessary to conduct our business;
- Organizations that perform underwriting and claims investigations;
- Another insurance company to which you have applied for a policy or submitted a claim;

Certified Document Number: 88177672 - Page 63 of 64

GeoVera/Nguyen000063



- Insurance support agencies, law enforcement agencies and our reinsurers; and
- Any other third party, as permitted or required by law.

> **Most importantly, GeoVera Specialty Insurance Company does not and will not disclose or sell your nonpublic personal information to anyone for marketing purposes.**

## CONFIDENTIALITY AND SECURITY

We restrict access to nonpublic personal information about you to those who need it to serve your insurance needs and to maintain and improve customer service. We maintain physical, electronic, and procedural safeguards that comply with federal and state laws and regulations to guard your nonpublic personal information.

## YOUR RIGHT TO ACCESS AND CORRECT INFORMATION

Upon your written request, we will send you a copy of relevant information we have about you in connection with your application for coverage. Please address your request to Customer Service, GeoVera Specialty Insurance Services, 1455 Oliver Road, Fairfield, CA 94534. If you feel that our information is incorrect, let us know and we will review it. If we agree, we will correct our files. If we do not agree, you may file a short statement of dispute with us. This statement will be included with any information disclosure we make in the future, or sent to anyone you designate who may have received such information in the past two years, or as otherwise required by law.

## DISCLOSURE AND PROTECTION OF FORMER CUSTOMERS' INFORMATION

We may disclose all the personal information we have collected, as described above. However, even if you no longer have a customer relationship with us, we will continue to follow our privacy policies and practices to protect your information.

Certified Document Number: 88177672 - Page 64 of 64

GeoVera/Nguyen00084



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 13, 2020

Certified Document Number:        88177672

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**




### Law Offices of Manuel Solis, P.C.

**Houston ✦ Dallas ✦ El Paso ✦ Harlingen ✦ Amarillo
Los Angeles ✦ Chicago ✦ Denver**

713-277-7838

August 14, 2019

<u>Via Certified Mail RRR</u>

Geovera Specialty Insurance Company
1455 Oliver Rd.
Fairfield, CA 94534-3472

> Re:   Minh Nguyen
> Claim #: FG17502941
> Property: 319 Cove Creek Ln., Houston, TX 77042
> Claims under DTPA and Texas Insurance Code

To Whom It May Concern:

On behalf of our client, Minh Nguyen, we invoke appraisal pursuant to the insured homeowner's policy and/or other relevant sections of the policy. Please select a competent appraiser within 20 days after receiving this written request.

We hereby designate Bobby Crowson as our qualified appraiser. Mr. Crowson can be contacted at:

> Bobby Crowson
> 936-577-7937
> bobby@bobbycrowson.com

If you would like to discuss this matter, please contact us immediately, otherwise, we look forward to your immediate attention to this matter and a follow-up response naming your appraiser.

Respectfully,

*/s/ Juan Solis*
Juan Solis
Attorney

**EXHIBIT 2**

Certified Document Number: 88177673 - Page 2 of 4

$ 006.80°

82 1P
00081187B1 AUG 15 2018
MAILED FROM ZIP CODE 77011

7019 0700 0002 2803 9479

5452434472 C054

Law Offices of Manuel E. SOLIS
6667 Navigation Blvd.
Houston, Texas 77011

F.G.17.5.0.2.4.1

J. deGuzman

AUG 19 2018

Claims



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Encana Credit Hazard
Company
1455 Oliver Rd
Fairfield CA 94534

9590 9402 5087 9092 0095 73

2. Article Number (Transfer from service label)
7019 0700 0002 2603 9479

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
  ($500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 13, 2020

Certified Document Number:        88177673

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com



**GeoVera Advantage™**
INSURANCE SERVICES, INC.

August 27, 2019

Juan Solis
Law Office of Manuel Solis
6657 Navigation Blvd
Houston, TX 77011

RE:  Named Insured:     Minh Nguyen
     Claim Number:      FG17502941
     Policy Number:     GC60026790
     Date of Loss:      08/28/2017
     Loss Location:     319 Cove Creek Ln, Houston, TX

Dear Mr. Solis:

This letter will serve as our formal response to the claim for damage to the dwelling located at 319 Cove Creek Ln, Houston, TX. We are handling this claim on behalf of GeoVera Specialty Insurance Company.

Please be advised, we received your correspondence advising us of your disagreement with our evaluation of your client's claim and formal request for appraisal. In addition, we received your estimate totaling $74,720.70 for damages allegedly associated with the above referenced claim. After reviewing the estimate we do not agree that the estimate is an accurate reflection of the damages sustained from this loss. Please be advised that at this time we have accepted coverage for your client's claim; however we do not agree with the amount presented in your estimate.

It is clear that your client is not in agreement with our evaluation in this matter and we are not in agreement with yours. As such, we will honor your request and proceed through the appraisal process. While we are agreeing to proceed with the appraisal process to resolve the dispute regarding the scope and price of the damages, please note that appraisal is not a means to resolve any coverage dispute. Additionally, regardless of any appraisal award issued, we reserve our rights to apply the policy coverages including any exclusions or limitations, to the appraisal award.

We refer you to the GeoVera Specialty Insurance Company Master Endorsement which is attached to the policy and states in part:

### SECTION I – CONDITIONS
..............................
**F. Appraisal** is replaced by the following:

**F. Appraisal**

GeoVera Advantage Insurance Services, Inc.    PO Box 2957, Fairfield, CA 94533 1-800-735-8086

EXHIBIT 3

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written demand from the other and notify the other of the appraiser's name and contact information. If the appraisers cannot agree on the amount of loss or the actual cash value in accord with this Condition, the two appraisers will choose a competent and impartial umpire. If the appraisers cannot agree upon an umpire within 15 days, you and we shall jointly ask a judge of a court of record in the judicial district where the "residence premises" is located to choose an umpire. Neither you nor we may assign the right to demand appraisal to anyone.

The appraisers will separately set the amount of loss and provide a written appraisal report specifically describing:

    **a.** Each item of property being appraised;
    **b.** The types or kinds of damage to each item of property;
    **c.** The extent of the damage to each item of property;
    **d.** The estimated costs of repair or replacement of each item of property;
    **e.** The estimated amount of depreciation and/or obsolescence of each item of property; and
    **f.** The actual cash value of each item of property.

If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If the appraisers cannot agree, they will each submit their differences to the umpire, specifically describing the differences and the amount attributable to each difference. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser;
**2.** Pay the costs of experts or any other expenses not mutually agreed in advance to share; and
**3.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

    **a.** You and we agree that any suit for or involving a disagreement in the amount of loss claimed under this policy shall be abated on the demand for appraisal by either you or us until after an appraisal award is issued in accord with this Condition; and
    **b.** We retain the right to apply the policy coverages, terms and conditions under this policy to any appraisal award.

............................

As outlined above, in the event that either party demands appraisal, each party will separately set the amount of loss and provide a written appraisal report specifically describing each item of property being appraised, the types or kinds of damage to each item of property, the extent of damage to each item of property, the estimated costs of repair or replacement of each item of property, the estimated amount of depreciation and/or obsolescence of each item of property, and the actual cash value of each item of property. Additionally,

Certified Document Number: 88177674 - Page 2 of 3

if the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss.

Our file has been referred to Tod Falcomata who will represent us in the appraisal process and will contact your appraiser. Mr. Falcomata can be reached at 713-320-2969 or by email at tod.falcomata@gmail.com.

Additionally, we feel obligated to make you aware of certain limitations under the policy with regard to legal action against us. Please refer to the Florida Master Endorsement which is attached to the policy and states in part:

.................................................

### SECTION I – CONDITIONS

H.  **Suit Against Us** is replaced by the following:

H.  **Suit Against Us**

1.  No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy. Any action against us must be filed within two years and one day after the cause of action accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

    However, if the laws of the state in which this policy was issued state that the foregoing suit limitations period is not enforceable, then any claim on this contract shall be void unless the "insured's" action is filed within the shortest limit of time permitted by the laws of that state.

.................................................

Please be advised that The Company does not, by any continued investigation of this claim, by this letter or otherwise waive, nor does it intend to waive, any of the terms or conditions, provisions, limitations or exclusions, of neither the policy, including our right to request that the insured submit to an examination under oath, nor any of its rights or defenses under applicable law. Should we learn or be advised of other facts with respect to this loss, we reserve the right to raise any applicable defenses under the policy or by law.

If you have any questions regarding this letter or our handling of this claim please contact me.

Sincerely,

Emmanuel Edu/rld
GeoVera Advantage Insurance Services, Inc.
Phone: 850-354-5052
Fax: 866-306-4539



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 13, 2020

Certified Document Number:        88177674

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

Marilyn Burgess - District Clerk
Harris County
Envelope No: 38632896
By: JOHN-MILLER, LEWIS
Filed: 11/19/2019 4:33:17 PM

### CAUSE NUMBER 2019-58469

| | | |
|---|---|---|
| **MINH NGUYEN** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **11th JUDICIAL DISTRICT** |
| | § | |
| **GEOVERA SPECIALTY** | § | |
| **INSURANCE COMPANY** | § | |
| *Defendant* | § | **OF HARRIS COUNTY, TEXAS** |

### ORDER OF ABATEMENT

On this day came on to be considered Defendant GeoVera Specialty Insurance Company's

Unopposed Motion to Abate, and the Court, after considering the motion and the pleadings on file,

is of the opinion that the Motion should be and is hereby GRANTED. It is therefore,

ORDERED that this case is abated until thirty (30) days following the completion of the

appraisal process. Upon completion of the appraisal process, the parties are further ordered to

provide notice to the Court of the date the abatement period is to end.

SIGNED this _____ day of _____, 2019.


_____
Honorable Judge Presiding

Certified Document Number: 88177675 - Page 1 of 1



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 13, 2020

Certified Document Number:        88177675

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

Marilyn Burgess - District Clerk
Harris County
Envelope No: 38632896
By: JOHN-MILLER, LEWIS
Filed: 11/19/2019 4:33:17 PM

**CAUSE NUMBER 2019-58469**

Pgs-1

PABAX

| | | |
|---|---|---|
| **MINH NGUYEN** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **11ᵗʰ JUDICIAL DISTRICT** |
| | § | |
| **GEOVERA SPECIALTY** | § | |
| **INSURANCE COMPANY** | § | |
| *Defendant* | § | **OF HARRIS COUNTY, TEXAS** |

**ORDER OF ABATEMENT**

On this day came on to be considered Defendant GeoVera Specialty Insurance Company's

Unopposed Motion to Abate, and the Court, after considering the motion and the pleadings on file,

is of the opinion that the Motion should be and is hereby GRANTED. It is therefore,

ORDERED that this case is abated until thirty (30) days following the completion of the

appraisal process. Upon completion of the appraisal process, the parties are further ordered to

provide notice to the Court of the date the abatement period is to end.

SIGNED this _____ day of _____, 2019.

Signed:
11/20/2019

Honorable Judge Presiding



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 13, 2020

Certified Document Number:        88206824

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com